## 57355. BOWERS v. THE STATE.

SMITH, Judge.

This case is before us upon our grant of appellant's application for interlocutory review. Because probable cause was lacking for the arrest pursuant to which police seized the objectionable evidence from appellant, we must reverse the trial court's denial of appellant's motion to suppress.

Appellant was traveling by plane from Miami, Florida, to Columbus, Ohio, and his itinerary included a brief stopover at Hartsfield International Airport, for the purpose of catching a connecting flight. Appellant had about twenty minutes time to catch his departing flight, and he was thus quite rushed in proceeding to gate 44, the gate of his intended departure. On arriving there and exchanging his airline ticket for a boarding pass, appellant was accosted by B. A. Glover, a narcotics agent who identified himself as such. Glover took appellant's pass from his possession and noted the name thereon, Peter Barnes. Then, as Glover testified: "I asked him if his name was Peter Barnes, which [sic] he replied, yes. I asked him where he was going and he replied he was going to Columbus, Ohio. I asked if he had any type of identification on him and he said that he did not. At that point in time, I informed him that I was conducting a narcotics investigation and asked him if he would walk with me down to the police precinct there in the terminal building." Appellant expressed concern that he might be caused to miss his flight, but to no avail, and he accompanied Glover as directed. Upon their reaching the station, which was downstairs and some three hundred feet away from gate 44, appellant identified himself as Gary Bowers, and Glover told appellant he was under arrest for providing false identification to a police officer during an investigation. A search which followed uncovered the contraband.

Glover's initial stop of appellant was based upon Glover's own observation of appellant and upon information relayed to Glover by an investigator stationed at the Miami airport, who had witnessed appellant's activities on departure from that city. Both agents noticed that appellant appeared nervous. The Miami investigator had observed that appellant paid cash for the ticket he purchased minutes before the departure of his flight, that he left a call-back number of an airport pay phone, and that he carried on whispered conversation with a "friend." These observations were supposedly consistent with a "drug courier profile" prepared by the United States Drug Enforcement Administration.

The state has not contended at any time that probable cause existed to arrest appellant at the time that Glover initially accosted him. (In fact, such probable cause did not exist.[1]) Rather, the state's contention, in the

---

[1] In Torres v. Puerto Rico, 47 USLW 4716 (U. S. Supreme Court Case No. 77-1609, decided June 18, 1979), the facts were as follows. Torres, a Florida resident, arrived at the San Juan airport aboard a flight from Miami. A police officer's suspicions were aroused when he observed that Torres seemed nervous and kept looking at an armed, uniformed officer stationed nearby in the airport. There was, however, no reason to suspect that Torres was carrying contraband. When Torres claimed his baggage, the officer stopped him, identified himself as an agent and took Torres to the airport police office, where an ensuing search revealed contraband. Torres was then arrested, and the Supreme Court of Puerto Rico affirmed his conviction for possession of marijuana. The Commonwealth of Puerto Rico contended that the search was legal based upon Public Law 22, § 1, P. R. Laws Ann., Tit. 25, § 1051 (supp. 1977), which provides: "The Police of Puerto Rico is hereby empowered and authorized to inspect the luggage, packages, bundles, and bags of passengers and crew who land in the airports and piers of Puerto Rico arriving from the United States; to examine cargo brought into the country, and to detain, question, and search those persons whom the Police have grounds to

trial court and on appeal, is that the initial detention was warranted as a Terry[2] stop, that the Terry stop continued from the waiting area of gate 44 to the police station downstairs, and that the conducted search was proper as incident to the arrest made upon Glover's discovery, in the station, that appellant was using an alias. Assuming arguendo that the facts justified a Terry stop, nevertheless we cannot accept the state's contention. Instead, the evidence demands the conclusion that the brief detention for questioning contemplated by Terry had been accomplished and appellant was under arrest when he, bereft of his boarding pass and of any means to depart, was told by a narcotics agent to accompany him to the police precinct. Probable cause to arrest undisputedly being absent at that time, the ensuing arrest and search were unlawful.

---

suspect of illegally carrying firearms, explosives, narcotics, depressants or stimulants or similar substances." Reversing Torres' conviction in agreement with his contention that his Fourth Amendment rights had been violated, the Supreme Court stated: "The search of appellant's baggage pursuant to Public Law 22 did not satisfy the requirements of the Fourth Amendment as we heretofore have construed it. First, the grounds for a search must satisfy objective standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests. Delaware v. Prouse, 440 U. S. ─, (1979). The governmental interests to be served in the detection or prevention of crime are subject to traditional standards of probable cause to believe that incriminating evidence will be found. Yet Public Law 22 does not require, and the officers who made the search challenged here did not have probable cause for such belief.

"Second, a warrant is normally a prerequisite to a search unless exigent circumstances make compliance with this requirement impossible. Mincey v. Arizona, 435 U. S. 385, 393-394 (1978). Yet, Public Law 22 requires no warrant and none was obtained before appellant's bags were searched." Torres, supra, p. 4718.

[2]Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

"A composite picture emerges of the 'Terry-type' stop. It is a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification . . . and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop." *Radowick v. State,* 145 Ga. App. 231, 237 (244 SE2d 346) (1978). As in *Radowick,* the detention here overreached its purpose and thus became an illegal arrest. "An arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force, and the arrest is complete." *Clements v. State,* 226 Ga. 66, 67 (172 SE2d 600) (1970). "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' " Davis v. Mississippi, 394 U. S. 721, 726 (89 SC 1394, 22 LE2d 676) (1969).

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

ARGUED MARCH 12, 1979 — DECIDED JUNE 28, 1979 — REHEARING DENIED JULY 30, 1979 —

*Garland, Nuckolls & Kadish, John A. Nuckolls,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Assistant District Attorneys,* for appellee.

ON MOTION FOR REHEARING.

It is interesting to note that the state in its motion for rehearing cited four federal circuit court cases, which are not binding on this court. Also the state cited several state cases. However, it made absolutely no attempt to answer Torres v. Puerto Rico, 47 USLW 4716 (U. S. Supreme Court Case No. 77-1609, decided June 18, 1979) which is binding on this court. In Torres the Supreme Court of the

United States confronted the issue of the so called "drug courier profile" and stated that "the detection or prevention of crime are subject to traditional standards of probable cause." In the process, the court struck down a law of Puerto Rico which seemingly attempted to replace the traditional Fourth Amendment standard of probable cause with the "drug courier profile." See footnote 1 in this opinion.

"The requirement of probable cause has roots that are deep in our history." Henry v. United States, 361 U. S. 98, 100 (80 SC 168, 4 LE2d 134) (1959). "Hostility to seizures based on mere suspicion was a prime motivation for the adoption on the Fourth Amendment, and decisions immediately after its adoption affirmed that *common rumor or report, suspicion, or even "strong reason to suspect"* was not adequate to support a warrant for arrest.'" Dunaway v. State of New York, 47 USLW 4635, 4639 (U. S. Supreme Court Case No. 78-5066, decided June 5, 1979). (Emphasis supplied.) The Supreme Court of the United States in United States v. Brignoni-Ponce, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607) (1974), in dealing with seizure of the person under the Fourth Amendment, said: "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. Davis v. Mississippi, 394 U. S. 721... (1969); Terry v. Ohio, 392 U. S. 1, 16-19... (1968). '[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person,' [id.,] at 16, and the Fourth Amendment requires that the seizure be 'reasonable.' "

In the case at bar, when the police officer took the boarding pass he had restrained appellant from walking away. When he then told the protesting appellant to go with him to the station house and kept the boarding pass, he definitely removed any doubt as to an arrest under the Fourth Amendment. There having been no probable cause for that arrest, everything from that point forward was illegal and the obtained evidence was inadmissible.

Two other recent U. S. Supreme Court opinions concern facts analogous to the situation before us. In Brown v. State of Texas, 47 USLW 4810 (U. S. Supreme

Court Case No. 77-6673, decided June 25, 1979), two police officers sighted Brown and another man walking away from each other. This was in an area with a high incidence of drug traffic. The officers stopped, and one officer testified that he stopped Brown because the situation " 'looked suspicious and we had never seen that subject in that area before.' " Ibid. The officers did not claim to suspect Brown of any specific misconduct, nor did they have any reason to believe that he was armed. Brown was arrested under a Texas statute that made it a criminal act for a person to refuse to give his name and address to an officer " 'who ha[d] lawfully stopped him and requested the information.' " Ibid. Holding that Brown's Fourth Amendment rights had been violated, the court reasoned: "The reasonableness of seizures that are less instrusive than a traditional arrest, see *Dunaway v. New York,* — U. S. —, — (1979); *Terry v. Ohio, supra,* at 20, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' *Pennsylvania v. Mimms,* 434 U. S. 106, 109 (1977); *United States v. Brignoni-Ponce, supra,* at 878. Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. See, *e.g., id.,* at 878-883.

"A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. See *Delaware v. Prouse,* 440 U. S. —, — (1979); *United States v. Brignoni-Ponce, supra,* at 882. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Delaware v. Prouse, supra,* at —. See *United States v. Martinez-Fuerte,* 428 U. S. 543, 558-562 (1976).

"The State does not contend that appellant was

stopped pursuant to a practice embodying neutral criteria, but rather maintains that the officers were justified in stopping appellant because they had a 'reasonable, articulable suspicion that a crime had just been, was being, or was about to be committed.' We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. *United States v. Brignoni-Ponce, supra,* at 880-881. See *Terry v. Ohio,* 392 U. S. 1, 25-26 (1968). However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Delaware v. Prouse, supra,* at —; *United States v. Brignoni-Ponce, supra,* at 882-883; see also *Lanzetta v. New Jersey,* 306 U. S. 451 (1938).

"The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

"*In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference.* The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of

crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. See *Delaware v. Prouse, supra,* at — (slip op., at 12-13)." (Emphasis supplied.)

In Delaware v. Prouse, 440 U. S. — (— SC —, — LE2d —) (Case No. 77-1571, decided Mar. 27, 1979), the court continues to hammer away at the law officers' practice of choosing at random the person or persons they wish to stop and question. In that case, a patrolman in a police cruiser stopped an automobile occupied by respondent and seized marijuana in plain view on the car floor. Respondent was subsequently indicted for illegal possession of a controlled substance. At a hearing on respondent's motion to suppress the marijuana, the patrolman testified that prior to stopping the vehicle he had observed neither traffic or equipment violations nor any suspicious activity, and that he made the stop only in order to check the driver's license and the car's registration. The patrolman was not acting pursuant to any standards, guidelines, or procedures pertaining to document spot checks, promulgated by either his department or the state attorney general. The court at page 5 of the slip opinion, stated: "The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. [Cits.] The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law-enforcement agents, in order ' "to safeguard the privacy and security of individuals against arbitrary invasion . . ." ' " In addition, the court stated: "Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth

Amendment would be seriously circumscribed. As *Terry v. Ohio, supra,* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles. See *Adams v. Williams,* 407 U. S. 143, 146 (1972).

"Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." Id. (slip op., p. 14).

Likewise, in the instant case neither is one shorn of his right to privacy when he disembarks from an airplane in Atlanta, Georgia. This is true despite the fact that some police officer in Ft. Lauderdale calls an officer at the Atlanta airport and tells him that the disembarking passenger resembles a drug courier. To allow such would be to encourage the development of a police practice of searching homes as well as individuals because they fit a profile. This case presents but another attempt to substitute some word or practice to circumvent the probable cause requirement of the Fourth Amendment. The court realizes that crime is rising, but some way can and must be found to combat it without destroying the constitutional rights of law-abiding citizens. The Constitution and laws were and are fashioned to protect the innocent and, in the process of so doing, to ferret out the guilty. To allow the police action here advocated by the state would be to deny every American citizen's constitutional right of privacy.