### 43317. THE STATE v. BUTLER.
(349 SE2d 684)

HUNT, Justice.

We granted the state's application for certiorari in this case after the Court of Appeals reversed Gary Wayne Butler's convictions for statutory rape, aggravated sodomy and child molestation. The Court of Appeals held that the trial court erred in allowing the pediatrician, who had examined the seven-year-old victim, to testify that in her opinion the child had been molested, which was an ultimate issue to be decided by the jury. *Butler v. State,* 178 Ga. App. 110 (342 SE2d 338) (1986).

The state's witness, Dr. Ann Fleming, a pediatrician to whom the victim had been referred, testified that she had examined over a dozen sexually abused children and had testified as an expert witness

in child abuse cases on at least 10 occasions. Upon her examination of the victim, she noted that the hymen was not intact and that the vaginal opening was larger than normal for a child seven years old. She noted that while not conclusive, this evidence was consistent with sexual abuse and that in most cases of child molestation there is no physical evidence of abuse.

Although she was not permitted to testify as to what the child told her,[1] she did relate that the statement made to her by the child contributed to her conclusion that the victim had been sexually molested. She explained that while the history given by the child and the physical exam conducted by the physician play roles of equal weight in arriving at a medical conclusion, in child molestation cases the history is important because "I think most people who have a lot of training in child development or child psychology understand that children of a certain age who are old enough to know truth from a lie can't lie about anything they don't really have an experience about." Dr. Fleming's conclusion that the child had been molested was found to be harmful error by the Court of Appeals on the grounds that her opinion was not in reality a medical opinion but one regarding the child's credibility and that there is no authority "that a pediatrician is better qualified to assess the credibility of a child than the average lay person."[2]

1. We cannot agree with the restrictive view of the Court of Appeals that Dr. Fleming's testimony was merely an opinion as to the child's credibility, not beyond the ken of the average layman and hence not admissible as an aid to the jury. Dr. Fleming's opinion that the child had been sexually abused was based on her physical examination of the child as well as on the history related to her by the child. This opinion was admissible under the rule that medical opinions concerning a patient's physical condition are admissible in evidence even when they are based in part on the physical history elic-

---

[1] Although not critical to this opinion, the trial court's exclusion of the child's statements was erroneous. OCGA § 24-3-4 provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence." Under this Code section the child's statements about *what* happened were admissible at trial. This is not to say, however, that her statements about *who* did it were admissible as this information would not be pertinent to the medical diagnosis. *Johnson v. State*, 149 Ga. App. 544 (5) (254 SE2d 757) (1979).

[2] Judge McMurray with Judge Beasley joining dissented saying that medical opinions are generally partly based on statements by the patient and are admissible as such. OCGA § 24-3-4. Judge Benham, who was joined by Presiding Judge Deen, opined in his dissent that the pediatrician's testimony was admissible for consideration by the jury as expert testimony on the credibility of children, which was beyond the ken of the average layman. *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981) (battered wife syndrome).

ited from the patient. *Petty v. Folsom*, 229 Ga. 477 (192 SE2d 246) (1972).

2. Moreover, in *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981), we held that "[e]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." There is no question that Dr. Fleming was competent as an expert — a pediatrician with expertise in child molestation. Nor is there any question that her conclusion that the child had been molested was one which the jurors would not ordinarily be able to draw for themselves. Thus, Dr. Fleming's opinion was admissible. Id. OCGA § 24-9-67.[3] Her opinion was one of fact, and was not inadmissible as a legal conclusion, compare *Cone v. Davis*, 66 Ga. App. 229, 234 (5) (17 SE2d 849) (1941) (opinion to the effect that the defendant was negligent) or a conclusion constituting a mixture of law and fact, compare *Nichols v. State*, 177 Ga. App. 689, 693 (2) (340 SE2d 654) (1986) (opinion that victim had been raped). See generally *Metropolitan Life Ins. Co. v. Saul*, 189 Ga. 1, 4 (2) (5 SE2d 214) (1939). Finally, the fact that her testimony indirectly, though necessarily, involved the child's credibility does not render it inadmissible.[4] See *Smith v. State*, supra. We find no error.

---

[3] "The opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Our holding in *Smith v. State*, supra, laid to rest any question that such expert testimony is admissible even on ultimate issues. Id. at 619. This holding comports with Rule 704 of the Federal Rules of Evidence which provides, in relevant part: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The abolition of the prohibition against the admissibility of expert testimony on "ultimate" matters "resulted from the fact that the rule excluding opinion on ultimate facts in issue is unduly restrictive, pregnant with close questions of application and the possibility of misapplication, and often unfairly obstructive to the presentation of a party's case, to say nothing concerning the illogic of the idea that these opinions usurp the function of the jury." McCormick, Evidence, § 12 at 27-28 (Cleary ed. 1972). See also Advisory Committee's Note to Rule 704. However, under the Federal Rules of Evidence as well as our holding in *Smith v. State*, supra, not all expert testimony on ultimate issues is admissible. The opinions must be helpful to the jury, that is, beyond the ken of the average layman. Rules 701, 702, Federal Rules of Evidence; *Smith v. State*, supra at 619.

[4] We find distinguishable the recent case of *United States v. Azure*, ___ F2d ___ (8th Cir. 1986) (Case No. 85-5407, decided Sept. 17, 1986), in which the U. S. Court of Appeals for the Eighth Circuit held in a child abuse case that it was error for the trial court to permit a pediatrician who was an expert on child abuse to testify that the alleged victim was believable and that he could "see no reason why she would not be telling the truth in this matter. . . ." Thus, unlike the case before us, the expert in *Azure* was permitted to testify directly regarding the question of the particular child's credibility, a question reserved for the jury. Further, the opinion of the expert in *Azure*, unlike that of Dr. Fleming in this case, was not a medical opinion based on a physical examination of the alleged victim as well as the history given by the alleged victim.

*Judgment reversed. All the Justices concur, except Smith, Weltner and Bell, JJ., who dissent.*

SMITH, Justice, dissenting.

Dr. Fleming testified that she had been a physician for almost three years. In her almost three years as a physician, she has examined over a dozen sexually abused children and has testified as an expert witness on at least 10 occasions. She testified that there was no conclusive evidence based on her physical examination of the child that the child had been sexually molested.[1] Thus the jury was confronted with an expert witness who impermissibly bolstered her own diagnosis and credibility and the child's credibility when she asserted that the statements made to her by the child must, in her expert opinion, be true because "I think most people who have a lot of training in child development or child psychology understand that children of a certain age who are old enough to know truth from a lie can't lie about anything they don't really have an experience about."

Dr. Fleming did not claim that she was an expert in child development or child psychology. She testified that as a part of "general pediatric training, every pediatrician receives *some training* in identifying and understanding child abuse." (Emphasis supplied.) Therefore, we are left with many unanswered questions.

Is it really impossible for children to lie about something they have not experienced? Do children have to have firsthand experience, or can the experience be a vicarious one? Can a child obtain enough experience by watching television, reading books, or magazines?[2] Can

---

[1] On recross-examination Dr. Fleming testified as follows: "Q. Is your physical findings as to both children also consistent with them not being molested?" "A. Yes, it is."

[2] The following appeared in The Marietta Daily Journal, Oct. 16, 1986.
"MORE YOUNGER CHILDREN ARE NOW VICTIMS OF SEXUAL ABUSE: Dear Dr. Brothers: I was shocked to find evidence in my 3-year-old daughter of sexual abuse. My doctor confirmed this and it turns out that our 7-year-old son is responsible. He has been forcing her to have sex with him. We don't know what to do about this. It angers, frightens and depresses my husband and me. What could cause this terrible thing to happen? — T.C.
"Dear T.C.: Doctors, therapists and law enforcement officers report that child abuse of this sort is becoming increasingly common. They're seeing growing numbers of cases where children are sexually abusing other children. This is a problem that has been around for years, but is being practiced more now. No one wants to believe this could happen, but it does.
"Why? *Maybe your son watched the Playboy channel, maybe he somehow got hold of pornographic books or magazines, or maybe he overheard conversations that resulted in overstimulating him.* Experts say that in many, if not most, cases, young molesters are simply duplicating things that have been done to them, usually by someone they know and trust. Is it possible your son was sexually molested by some relative or friend? Check this out.
"Obviously, there's a difference between simple sexual experimentation, looking and touching, and in sexual behavior that can leave deep scars on both the young molester and the young victim. Don't be hysterical, but take action to protect both your son and daughter." (Emphasis supplied.)

a child experience an event by being told by another about that event? What if the event was experienced at an earlier time with other actors? Where are these people with the understanding so that they can be cross-examined? Is the understanding a hypothesis? Has it been tested? Has it risen to the level of a theory in child psychology? Has the understanding reached a stage of scientific verifiable certainty?

In *Harper v. State*, 249 Ga. 519, 524-526 (292 SE2d 389) (1982), the appellant's expert, a psychiatrist, wanted to testify that based on a truth-serum test that he had given the appellant that it was his expert opinion that the appellant was telling the truth when he denied participating in a murder. The expert was also willing to testify that use of sodium amytal was "an accepted medical and psychiatric technique." Id. at p. 524. The trial court ruled that the reliability of the test had not been established with enough certainty to allow it to be admitted into evidence. We held, "that it is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or . . . whether the procedure 'rests upon the laws of nature.' " Id. at p. 525. We stated that until there is verifiable certainty that truth serum compels a person to tell the truth, neither the results of a test nor the opinion of an expert based on the results of a test are admissible.

There is nothing in the record before us to indicate that the trial judge even considered whether or not Dr. Fleming's statement that a child cannot lie about something that she has not experienced had reached a stage of verifiable certainty, and yet it was allowed to stand as proof that the child could not lie and that Dr. Fleming's diagnosis was accurate. The jury heard the expert bolster not only the child's credibility, but her own opinion and credibility with the use of an "understanding" that had no verifiable certainty shown. The prejudicial effect of the statement far outweighed its reliability.

Furthermore, *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981) was decided *only after studying the battered woman syndrome and its use by other jurisdictions* "to assist the jury in evaluating the battered woman's defense of self-defense. [Cit.]" Id. at p. 619. We determined that it was admissible under circumstances peculiar to certain self-defense claims. We reasoned that a jury could not ordinarily draw certain conclusions for themselves, such as; "why a person suffering from battered woman's syndrome would not leave her mate, would not inform police or friends, and would fear increased aggression against herself. . ." Id. Testimony regarding the battered woman syndrome assists the jury in understanding the defendant's unusual *behavior and conduct*, which are vital issues in the battered woman's defense. *Smith* does not stand for the proposition that an expert may bolster her own credibility or testify directly as to the credibility of

the witness. The expert in *Smith* did not want to testify that "people who have a lot of training" understand that battered women cannot lie. The expert wanted to testify regarding "whether the defendant's situation was similar or dissimilar to the situations of other battered women." Id. at p. 614. The battered woman's unusual *behavior and conduct* are beyond the ken of the jury, but her truthfulness is not. We refused in subsequent cases to extend our holding in *Smith*.[3]

Even under the more liberal Federal Rules of Evidence, Dr. Fleming's bolstering of the child's testimony would not have been allowed. In *United States v. Binder*, 769 F2d 595 (9th Cir. 1985) the Ninth Circuit Court of Appeals stated: "The three expert witnesses testified that the complaining witnesses were able to distinguish reality from fantasy and truth from falsehood. The effect of the expert witnesses' testimony was to bolster the children's story and to usurp the jury's fact-finding function." Id. at p. 602.

More recently in *United States v. Azure*, ___ F2d ___ (No. 85-5407, decided September 17, 1986), the Eighth Circuit Court of Appeals was faced with a case that for all practical purposes is identical to the one at bar. A pediatrician, Dr. ten Bensel, who "has handled around one thousand child abuse cases and two hundred child sexual abuse cases, . . ." was allowed to testify that the child "was believable and that he could 'see no reason why she would not be telling the truth in this matter. . . .'" Id. The trial court ruled that Dr. ten Bensel's opinion was admissible under Fed. R. Evid. 702 as it "allows an expert to give an opinion when his specialized knowledge 'will assist the trier of fact to understand the evidence or to determine a fact in issue . . . .'" Id. The Court in reversing the case stated "that in these types of special circumstances some expert testimony may be helpful, but putting an impressively qualified expert's stamp of truthfulness on a witness' story goes too far in present circumstances. Dr. ten Bensel might have aided the jurors without usurping their exclusive function by generally testifying about a child's ability to separate truth from fantasy, by summarizing the medical evidence and expressing his opinion as to whether it was consistent with [the child's] story that she was sexually abused, or perhaps by discussing various patterns of consistency in the stories of child sexual victims in [the child's] story. However, by going further and putting his stamp of believability on [the child's] entire story, Dr. ten Bensel essentially told the jury that [she] was truthful in saying that Azure was the person

---

[3] In *Sinns v. State*, 248 Ga. 385, 387 (283 SE2d 479) (1981), we refused to extend *Smith* to the voluntariness of confessions and we clearly indicated our position that "The *Smith* holding was the result of the need to treat a unique and almost mysterious area of human *response* and *behavior*." (Emphasis supplied.) We also refused to extend *Smith* in *Williams v. State*, 254 Ga. 508 (330 SE2d 353) (1985).

who sexually abused her. No reliable test for truthfulness exists and Dr. ten Bensel was not qualified to judge the truthfulness of that part of [her] story. The jury may well have relied on his opinion and 'surrender[ed] their own common sense in weighing testimony. . . .' Barnard, 490 F2d at 912." Id.

"[C]ompetency is for the judge, not the jury. Credibility, however, is for the jury — the jury is the lie detector in the courtroom . . . . It is now suggested that psychiatrists and psychologists have more . . . expertise than either judges or juries, and that their opinions can be of value to both judges and juries in determining the veracity of witnesses . . . . The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral but still an important matter." *United States v. Barnard*, 490 F2d 907, 912 (9th Cir. 1974), cert. denied, 416 U. S. 959 (1974).

The expert in this case stated not only that it was her opinion that the child was molested, based on statements that the child made to her, but that the child could not have lied about something she had not experienced. The expert was allowed to: 1) introduce into evidence an "understanding" that had not reached a state of verifiable certainty; 2) introduce into evidence an "understanding" that was nothing more than hearsay; and 3) totally usurp the function of the jury by so doing. If this case is allowed to stand, there will be no need for a jury in the next case. All that will be needed is an expert to testify that although there is no conclusive physical evidence of child molestation, based on what the child has said, and based on the "fact," as accepted by this court, that children cannot lie about what they have not experienced, the child was molested by the accused.

Credibility is a jury question, OCGA § 24-9-80, even when the witness is a child. *Frasier v. State*, 143 Ga. 322 (85 SE 124) (1915). Furthermore, "[a] party may not bolster his opinion as to the ultimate issue with expert testimony when the jury could reach the same conclusion 'independently of the opinion of others.' [Cit.]" *Williams v. State*, 254 Ga. 508, 510 (330 SE2d 353) (1985). I am satisfied, as was the Court of Appeals, that excluding the inadmissible testimony of the pediatrician, there was sufficient evidence from which the jury could have found the appellant guilty beyond a reasonable doubt. *Butler v. State*, 178 Ga. App. 110, 113 (342 SE2d 338) (1986).

As a result of this being such an emotion-filled area of the law at this time,[4] we are ignoring the time-honored rules of evidence and are

---

[4] We must proceed slowly and carefully in this era of public awareness. We cannot allow our revulsion of sexual abuse or molestation to turn our courts into a forum in which the accusation becomes the conviction and affirmance. According to a recent newspaper article

creating new rules for child abuse and molestation cases in order to obtain convictions of those who are perceived guilty of those heinous crimes. But, as I said in *Bowers v. State,* 151 Ga. App. 46, 54 (258 SE2d 623) (1979), "[t]he Constitution and laws were and are fashioned to protect the innocent and, in the process of so doing, to ferret out the guilty." Those accused of other crimes should not be provided greater evidentiary protection than those accused of child molestation.[5]

I am authorized to state that Justice Weltner and Justice Bell join in this dissent.

DECIDED OCTOBER 29, 1986 —
RECONSIDERATION DENIED NOVEMBER 25, 1986.

*W. A. Foster III, District Attorney, Christine C. Daniel, Assistant District Attorney,* for appellant.
*Lane & Sanders, Thomas C. Sanders,* for appellee.

---

some studies show that there has been an increase in accusations of sexual abuse of children in custody battles. This is an area in which we need to carefully weigh the conflicting findings and studies of the experts before we change the law.

Some experts who delivered papers at the annual meeting of the American Academy of Child and Adolescent Psychiatry asserted that "many social workers and family counselors who interview alleged molestation victims lack adequate training for the task, . . . Too many counselors believe they can determine if molestation occurred by relying solely on how alleged victims play with anatomically correct dolls.

"A study of 15 children who played with such dolls showed 'children with a history of sexual abuse could not be discriminated' from those who weren't molested, wrote Dr. Jonathan Jensen, author of the University of Minnesota study."

*Fathers in custody fights face sex abuse charges,* The Atlanta Journal and Constitution, Oct. 19, 1986.

[5] Williams, who was accused of murder, was given a new trial after we found that an expert in that case was allowed to testify to the ultimate issue. Id.