## A99A1697. ATKINS v. THE STATE.
### (533 SE2d 152)

BLACKBURN, Presiding Judge.

Langston Leonard Atkins appeals his convictions, following a jury trial, for two counts of aggravated child molestation, one count of child molestation, and two counts of enticing a child for indecent purposes. Atkins was tried for separate offenses against two victims, J. B. and D. K. On appeal, Atkins contends that: (1) the evidence was insufficient to support the verdict against him; (2) the trial court erred by permitting a pediatrician who examined D. K. to testify regarding the medical history given by the victim; and (3) the trial court erred by limiting his cross-examination of a psychologist who treated J. B. For the reasons set forth below, we affirm.

1. Atkins first contends that the evidence was insufficient to support the verdict against him.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Atkins] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The . . . verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Kovacs v. State*, 227 Ga. App. 870-871 (1) (490 SE2d 539) (1997). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) J. B. testified that, in September 1995 when he was 14 years old, he became acquainted with Atkins, a rap singer and music promoter who had given a speech at his high school. J. B. later auditioned for Atkins in the hopes of starting a career as a singer. Over the several weeks that followed, Atkins molested J. B. three times. Prior to the final act of molestation, anal intercourse, Atkins asked J. B. if he had ever "freaked," a euphemism for anal intercourse, and told him "if you wanna be a rapper, you gotta go through it."

Two days later, J. B. informed his mother about Atkins' actions, and she reported the matter to the police. J. B. recounted his story to Officer Lewis, Detective Paul Warner, and Dr. Carlos Delgado. In addition, J. B. sought counseling from Pat Lawyer, a psychotherapist working for the Georgia Center for Children.

(b) D. K. testified that he met Atkins at a mall where Atkins was selling audiotapes. Sometime later, D. K. ran into Atkins again at a nightclub. That night, Atkins asked D. K. to drive him to an apartment complex where, while parked in a dark area, Atkins forced D.

K. to have anal intercourse with him. Prior to the act of molestation, Atkins asked D. K. whether he was a freak, just as he had done with J. B.

D. K. told his best friend about the incident immediately, and he later described the molestation to his aunt and mother when he feared that Atkins was HIV positive. After reporting the crime to the police, D. K. was examined by Dr. Jane Wilkov, a pediatrician, who confirmed that the details of his story and symptoms were consistent with descriptions of abuse by molestation victims.

Atkins was arrested at his home on October 19, 1995, where he was hiding in his attic underneath rolls of insulation, and he was subsequently convicted by a jury for the crimes which form the subject of this appeal.

(c) This evidence was more than ample to support the verdict against Atkins, and it makes no difference whether or not there was any evidence corroborating the acts of molestation described by J. B. and D. K.

> Sexual offenses against children necessarily occur in secret. This is one reason that Georgia law does not require corroboration of a child molestation victim's testimony. *Scales v. State*, 171 Ga. App. 924 (2) (321 SE2d 764) (1984); see *Baker v. State*, 245 Ga. 657, 664 (5) (266 SE2d 477) (1980); see also OCGA § 24-4-8. Accordingly, "taking the victim[s'] testimony as true, as we must, it alone was clearly sufficient to authorize [Atkins'] conviction of the (offenses as charged) under the standard set forth in *Jackson v. Virginia*, (supra)." *Bryant v. State*, 226 Ga. App. 135, 136 (486 SE2d 374) (1997).

*Cantrell v. State*, 231 Ga. App. 629, 630 (500 SE2d 386) (1998).

2. Atkins erroneously contends that Dr. Wilkov testified that she believed that D. K. told her the truth about his molestation, thereby giving her conclusion as to the ultimate issue of Atkins' guilt, and that the trial court erred in allowing such testimony.

In fact, Dr. Wilkov testified only that the medical history given by the victim was consistent with what she would expect from a victim of molestation. She based this conclusion on a list of physical symptoms described to her by D. K. Using her specialized knowledge as a pediatrician, Dr. Wilkov assessed these physical symptoms to reach her diagnosis that they were consistent with symptoms suffered by a molestation victim. Because Dr. Wilkov's analysis of D. K.'s symptoms required her training and expertise as a pediatrician, the inference drawn by her from the symptoms, namely her diagnosis, was beyond the ken of the jurors. Therefore, as discussed more fully below, her testimony was admissible.

On the other hand, Dr. Wilkov did not give any testimony usurping the jury's function of drawing inferences and conclusions not beyond their ken. Dr. Wilkov did *not* conclude that D. K. had actually been molested or, if so, that Atkins had committed the act. Dr. Wilkov explicitly testified that she could not give an opinion as to either the victim's credibility or whether any molestation had actually occurred based on the current absence of physical evidence of molestation. As such, Dr. Wilkov's testimony presents no error.

Existing precedent from both this Court and our Supreme Court supports the admission of Dr. Wilkov's testimony.

> The general rule concerning the admissibility of expert testimony as to the ultimate issue is this: An expert may not testify as to his opinion as to the existence *vel non* of a fact (in this case, whether the child had been abused sexually) unless the inference to be drawn from facts in evidence is beyond the ken of the jurors.

(Punctuation omitted.) *Thompson v. State*, 233 Ga. App. 364 (1) (504 SE2d 234) (1998). Furthermore, questions of witness credibility are completely within the province of the jury. *Brannon v. State*, 266 Ga. 667, 668 (469 SE2d 676) (1996).

Here, the record shows that, after reporting the molestation to the police, D. K. was referred to Dr. Wilkov, a pediatrician specializing in treating abused children. Dr. Wilkov examined D. K. several months after the molestation, and as a part of his medical history, D. K. described the symptoms he suffered directly following the anal penetration. Specifically, D. K. told Dr. Wilkov that "it felt like cold was getting in my body," it "hurt to use the bathroom [and was h]ard to sit," and his bowel movements were "[m]ucousy at first with a little blood." Dr. Wilkov testified that, although D. K. was not still suffering from these symptoms at the time she examined him, she would not expect to find any physical evidence of molestation several months after the alleged event.

During direct examination, Dr. Wilkov was questioned whether the symptoms described by D. K. in giving his medical history were consistent with those about which abuse victims might complain. Over Atkins' objection, Dr. Wilkov then testified, based on D. K.'s description of his symptoms:

> My opinion was that [D. K.] was able to give me a credible history, of anal penetration[,] . . . describe the trauma . . . [and] the physical findings were normal at the time of my exam, which is what I would've expected, based on litera-

ture. And, therefore, I thought everything was very consistent, with him having been molested.

Subsequently, on cross-examination, Atkins' counsel repeatedly asked Dr. Wilkov questions relating to the veracity of the victim, including what her conclusion would have been if D. K. had lied about the history of anal penetration. Dr. Wilkov replied:

*Well, I think that's not up to me to judge whether the history is the truth or not.* I've got a child that comes to me that is able to describe some . . . physical findings, that is able to describe them while I'm doing my physical exam. . . . I just have to do a physical exam and base a conclusion just on a physical exam.

(Emphasis supplied.)

Thus, in response to questions from Atkins' counsel, Dr. Wilkov made it clear that she was not giving her opinion as to D. K.'s veracity or whether or not an act of molestation had actually occurred. Moreover, she never attempted to link Atkins to any act of molestation that may have occurred. Dr. Wilkov merely gave her opinion as to whether the symptoms described by D. K. were *consistent* with those reported by known victims of abuse by anal penetration. The medical history is a part of a physical exam. The question is whether or not the physician may testify concerning the medical history absent objective evidence of molestation on examination. We hold that the physician can so testify. The physician explained that the absence of physical evidence of molestation was not unusual given the fact that the examination occurred several months after the alleged act.

In this case,

[t]he witness . . . did not testify that in her opinion the [child] had been abused . . . by [Atkins]. Rather, the questions and answers were phrased in terms of whether the results of the witness's professional observations and testing of the [child] were consistent with a child who has been abused. This conclusion is within the bounds of permissible expert testimony.

(Punctuation omitted.) *Jones v. State*, 232 Ga. App. 505, 506 (3) (502 SE2d 345) (1998).

This result is well supported by precedent in this State. In *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986), our Supreme Court established a very broad view regarding the admissibility of a pediatrician's opinion that a child had *actually* been abused based on a

physical examination and medical history. In that case, the Supreme Court held:

> [The expert's] opinion that the child had been sexually abused was based on her physical examination of the child as well as on the history related to her by the child. This opinion was admissible under the rule that medical opinions concerning a patient's physical condition are admissible in evidence even when they are based in part on the physical history elicited from the patient. . . . There is no question that [the expert] was competent as an expert — a pediatrician with expertise in child molestation. Nor is there any question that her conclusion that the child had been molested was one which the jurors would not ordinarily be able to draw for themselves. Thus, [the expert's] opinion was admissible . . . [, and] the fact that her testimony indirectly, though necessarily, involved the child's credibility does not render it inadmissible.

(Footnotes omitted.) Id. at 449-450.

Subsequent to this decision, this Court followed suit, finding in a number of cases that a pediatrician could opine, based on a physical examination of the victim, that an act of molestation *actually occurred*, as long as the expert did not also specifically name the defendant as the perpetrator. See, e.g., *Strickland v. State*, 212 Ga. App. 170, 173 (4) (441 SE2d 494) (1994); *Karvonen v. State*, 205 Ga. App. 852, 853 (2) (424 SE2d 47) (1992); *Johnson v. State*, 186 Ga. App. 77, 78 (366 SE2d 409) (1988).

With its decision in *Allison v. State*, 256 Ga. 851 (353 SE2d 805) (1987), however, our Supreme Court appeared to restrict the broad admissibility of an expert's conclusion that molestation *actually* occurred. In *Allison*, a professor testified regarding the characteristics of child sexual abuse syndrome. Then, a child therapist, based on:

> his observations of the [victim], his discussions with others who had counseled her, and the results of a battery of psychological tests that he [had] administered, . . . [testified that the victim] "does definitely appear to fall into [child sexual abuse] syndrome. . . . In my professional opinion, she has been sexually abused."

Id. at 851-852. No direct tangible evidence of physical abuse was admitted into evidence.

Our Supreme Court held:

> The jury, having the benefit of extensive testimony as to the lineaments of the child abuse syndrome, as well as testi-

mony that this child exhibited several symptoms that are consistent with the syndrome, was fully capable of deciding — upon their own — whether the child *in fact* was abused, and, if so, whether [the defendant] did it. For that reason, the admission of this aspect of the [child therapist's] testimony [that molestation actually occurred] was incorrect. (Compare *State v. Butler*, [supra].)

(Emphasis in original.) *Allison*, supra at 853 (6). Thus, under *Allison*, the Supreme Court set forth a rule that, where evidence of an abuse syndrome is admitted and no tangible physical evidence of abuse is presented, an expert cannot testify that abuse actually took place but can testify that the victim's symptoms are consistent with a determination that the victim is suffering from an abuse syndrome. Because the expert in *Allison* had no direct physical evidence of abuse, only evidence gained through discussions with the victim and observations of her behavior, the expert was prevented from giving an opinion as to the ultimate issue of fact, i.e., that molestation *actually* occurred.

Our Supreme Court took this rule one step further in *Harris v. State*, 261 Ga. 386 (405 SE2d 482) (1991). In that case, a physician was directly asked, based on his physical examination of the victim, whether he believed that the victim had been sexually molested. Over objection, the expert answered affirmatively. Despite the fact that the opinion was based on a physical examination rather than an abuse syndrome, of which no evidence of the latter was admitted, the Supreme Court held that the issue was controlled by *Allison*, supra, and the testimony was inadmissible. Therefore, pursuant to *Harris*, a pediatrician, based on her physical examination of the child as well as on the history related to her by the child, may no longer opine directly that an act of abuse *actually* occurred, despite the fact that *Butler* has never been overruled. On the other hand, as pointed out by Justice Hunt in his dissent, which was joined by Chief Justice Clarke and Justice Fletcher, a pediatrician may testify that her findings are *consistent* with the occurrence of molestation.

*Allison* and *Harris* strike a balance between the admission of evidence essential to the jury's determination whether abuse occurred and the prevention of an expert from usurping that determination. As the pediatrician in *Butler* pointed out, "in most cases of child molestation there is no physical evidence of abuse." Id. at 449. Therefore, as in the case now before us, most of the evidence of abuse will be comprised of the medical history provided by the victim. The medical history, in turn, is made up of a list of discrete medical and/ or psychological symptoms. The average juror, lacking training as a physician, psychiatrist, or psychologist, cannot draw an inference on

his or her own whether these symptoms are indicative of molestation or abuse. Therefore, an expert should be allowed to testify that the symptoms and history described by the child were consistent with the occurrence of molestation. And while this evidence might indirectly reflect on the victim's credibility, it would nonetheless be admissible, as would any relevant evidence linking any defendant to any crime.

To stop the expert from overstepping his or her bounds and invading the province of the jury, he or she is prevented from definitively stating that molestation or abuse actually occurred. This is the appropriate result, as the determination of this ultimate issue may turn on numerous facts in evidence beyond the medical or psychological evidence which requires the specialized knowledge of the expert to understand. In other words, although it may be beyond the ken of the jury to determine whether certain physical and psychological symptoms were consistent with abuse, it would not be beyond their ken to determine whether an expert's opinion that the symptoms were consistent with abuse in conjunction with all of the other evidence elicited at trial proves that the victim was both molested and molested by the defendant.

Applying this analysis to the case now before us, Dr. Wilkov's testimony would be admissible. She explicitly told the jury that she was not giving her opinion as to the actual occurrence of the molestation or the victim's credibility. Dr. Wilkov testified that her lack of physical findings and interview of the victim produced results which were *consistent* with the occurrence of molestation. She did not testify that D. K. was *actually* molested. She did not testify that Atkins molested D. K. Dr. Wilkov's testimony would be admissible under *Allison* as expanded by *Harris* because she never testified that molestation occurred, only that her findings were consistent with molestation. On one side of the scale, this testimony served the necessary function, which was beyond the ken of the jury, of linking D. K.'s medical symptoms, namely a feeling of "cold inside him," pain when sitting, and blood and mucus in his stool, to anal penetration. On the other side of the scale, this testimony left the ultimate determinations of D. K.'s molestation and the identity of the molester completely up to the jury. Therefore, the expert testimony in this case fits directly into the category of admissible evidence set out in *Allison* and *Harris*, and it strikes the precarious balance envisioned therein.

The fact remains, however, that this case is, in fact, distinguishable from *Butler*, *Allison*, and *Harris* because Dr. Wilkov not only provided admissible testimony on direct examination, but she also buttressed Atkins' case by explicitly telling the jury that she was *not* judging the credibility of anything the witness told her. Not only did Dr. Wilkov not invade the province of the jury, but she drew a line in

the evidentiary sand, pointed it out to the jury, and let them know she had no intention of crossing it. This testimony sets this case apart and, by itself, makes Atkins' enumeration meritless.

Thus, for all of the reasons set forth above, the trial court did not err in allowing Dr. Wilkov's testimony into evidence.

3. Finally, Atkins contends that the trial court erred by limiting his cross-examination of a psychologist who treated J. B. regarding the content of their discussions. We disagree.

During the trial, the State called Lawyer as a witness. On direct, Lawyer testified that she was a psychotherapist who worked for the Georgia Center for Children, an organization which provides both forensic interviewing services to the Fulton and DeKalb County Police Departments and free psychotherapy to victims of physical abuse.

Atkins contends that he should have been allowed to cross-examine J. B.'s therapist about the substance of her meetings with J. B., which, pursuant to a motion in limine brought by the State, the trial court prevented Atkins from doing. The trial court based its ruling on the issue of privilege. In response to Atkins' contentions, the trial court replied: "[J. B.'s therapist] cannot go into detail about what that counseling was all about, any more than you can." The trial court further explained to Atkins that he could not allow him to engage in a fishing expedition into privileged areas without evidence showing that it was necessary.

The record is clear that Atkins understood the nature of the trial court's ruling and acquiesced in it on the applicability of privilege to the testimony of J. B.'s therapist. In response to the trial court's explanation for its ruling, Atkins agreed, explicitly stating: "Well, certainly, there's a privilege that exists between the patient and the health care provider in that context." Atkins argued only that, despite the privilege, he should be allowed to cross-examine J. B.'s therapist regarding the substance of her sessions with J. B.

Atkins, however, did not make a proper showing of the necessity of such a line of questioning.

> The privilege established by OCGA § 24-9-21 (5) prohibits the defendant from engaging in a "fishing expedition" regarding a witness' consultations with a [psychologist]. Therefore, a defendant may not explore such evidence unless he makes allegations sufficient to establish a prima facie need for its discovery by a proper motion for a pretrial hearing. At the ensuing inquiry, the [psychologist] would be available to the defendant for discovery of his findings and any statements made by the patient-witness to him material to the issues on trial. The trial court must, consistent with

the demands of due process, then delineate those communications available to the defense for use at trial. Conversely, any communications not central to the defense must remain privileged and inadmissible at trial.

*Bobo v. State*, 256 Ga. 357, 360 (4) (349 SE2d 690) (1986).

In this case, Atkins neither made a motion for a pretrial hearing on the matter nor gave the court a compelling reason to violate the psychologist-patient privilege. In response to the State's motion in limine, Atkins set forth a supposition that J. B. might be receiving counseling, in part, due to a strained relationship with his mother. However, Atkins told the trial court that he had no evidence to support his theory. Thus, due to the complete absence of any evidence from Atkins that it would be necessary to violate J. B.'s psychologist-patient privilege, the trial court did not err by limiting Atkins' cross-examination of J. B.'s therapist and thereby preventing him from engaging in a fishing expedition to dredge up evidence of domestic problems totally unrelated to the act of molestation.

Moreover, regardless of whether a privilege attached to the therapist's testimony, Atkins could have, within the scope of the court's limiting order, cross-examined the witness sufficiently to defeat any suggestion that the therapist saw the victim only because he had been sexually abused. Atkins could have asked the therapist to confirm that she sees children for reasons other than sexual abuse, to confirm that she was not testifying about the subject matter of her counseling sessions, and to confirm that, therefore, she was not testifying that the victim had in fact been sexually abused but only that she had seen the victim. Thus the court's order limiting the scope of cross-examination did not prevent the defendant from countering the harmful suggestion. Any disparity in inferential evidence in this case did not result from the trial court's ruling on the State's motion in limine. Rather, the disparity arose from Atkins' choice not to thoroughly examine J. B.'s therapist on the nature of her expertise and practices.

Furthermore, Atkins was limited by his failure to follow statutory procedures to authorize the admittance of privileged testimony in light of his knowledge that J. B.'s therapist would testify as she had at the prior trial of this case which resulted in a mistrial because of a hung jury. We note that the State did not seek any testimony from J. B.'s therapist which violated J. B.'s privilege.

*Judgment affirmed. Johnson, C. J., McMurray, P. J., Pope, P. J., Eldridge and Phipps, JJ., concur. Barnes, J., concurs in judgment only.*

DECIDED MARCH 30, 2000 —
RECONSIDERATION DENIED APRIL 13, 2000.

*Lynn M. Friedewald,* for appellant.
Langston L. Atkins, *pro se.*
*J. Tom Morgan, District Attorney. Robert M. Coker, Assistant District Attorney,* for appellee.