## A00A0960. SIHARATH v. THE STATE.
(541 SE2d 71)

POPE, Presiding Judge.

Chanthala Siharath appeals following his conviction on one count of rape and four counts of child molestation. We affirm.

Viewed in the light most favorable to the verdict, the evidence showed that at the relevant time, the victim was a ten-year-old girl, who lived with her mother, stepfather and two younger siblings. In the fall of 1997, William Goggins of the DeKalb County Police Department's Community Oriented Policing Program taught a Drug Abuse Resistance Education (DARE) class at the victim's school. Goggins provided a box at the school in which students could place questions that they did not wish to ask in front of a group. On October 16, 1997, Goggins checked the box and discovered the following three notes signed by the victim:

(1) If a stepfather had sex with a stepdaughter, what would she do?
(2) If you stay home with an oder [sic] person an [sic] with two little kides [sic] would would [sic] you do?
(3) If someone try to threat [sic] you that they go [sic] to kill you what would you do?

Goggins told the victim's teacher about the notes, and the child was subsequently referred to the school social worker.

The victim told the social worker that her mother worked at night and that her stepfather came into her bedroom and put his hands all over her body. She said that she had not told her mother and that the family was afraid of her stepfather because he had threatened to kill them with a knife. The social worker did not attempt to interview the girl at any length, but instead referred the matter to the Department of Family & Children Services.

After DFACS was notified, the victim was taken into protective custody and placed in a foster home. Shortly after she arrived at her foster home, the victim told her foster mother that her stepfather was very violent and that she was afraid for her mother and younger siblings. She said that her mother worked in the evenings and that her stepfather would fondle her and had placed his penis inside her.

The next day she was interviewed by police. The victim told the investigating police officer that her stepfather was a violent man.

Although the violence was most often directed toward her mother, the girl stated that she was afraid of him. In August and September 1997, the victim's mother was working the evening shift at her job. While her mother was away, the girl said that her stepfather would put his hands inside her shirt and play with her breasts. He would also come into her bedroom after she had gone to bed at night and touch her breasts with his hands and mouth. He also would fondle her private area and place his penis inside her. The girl used anatomically correct drawings to demonstrate to the officer the areas of the body she was describing. A videotape of this interview was shown to the jury.

The evidence also showed that while in DFACS' custody, the victim was examined by a physician. During the examination, the victim, using drawings, told the doctor that her stepfather had touched her breasts with his mouth and hands and had touched her genitals with his hand and his penis. She also told the doctor that she had not told anyone about these events earlier because she was afraid her stepfather would hit her. The physician testified that although she found no evidence of scars, bruises or other traumatic injury, her findings were not inconsistent with the girl's story given the girl's age and the passage of time between the events and the reporting of those events.

In her testimony at trial, the victim stated that her stepfather had hit her mother, younger sister and her on more than one occasion. She also recounted a fight that occurred when her mother tried to leave her stepfather and he had almost cut her mother's hand. Using diagrams, the victim demonstrated where her stepfather had touched her and the parts of his body he had used to touch her. She said that she tried to tell him to stop, but that he would not stop. She did not try to get away or scream out, however, because she was afraid. The girl stated that she told her best friend that her stepdad had "slept" with her and had raped her. But she stated that she did not tell anyone else about these things for a long time because she was afraid her stepfather would hit her for telling.

1. Siharath first contends that the trial court erred in qualifying Vicky Fadley as an expert in the area of "forensic evaluation" of the victims of child sexual abuse. Fadley was qualified at trial as an expert in the areas of forensic evaluation and therapy of child sexual abuse victims. Fadley testified that, in this context, forensic evaluation consists of a formalized process to determine whether a child has been sexually abused, whereas therapy is the process of providing support to a child who has been abused. Siharath objects only to Fadley's qualification as an expert in forensic evaluation because he argues that her training was primarily in therapy. In particular, he argues that it was improper to allow Fadley to testify that it was not

unusual for a child to endure sexual abuse, yet keep it a secret, even where the child might have a safe outlet to report the abuse. Because the primary evidence against Siharath was the victim's statements, he argues that Fadley's testimony improperly swayed the jury's decision.

The qualification of an expert witness is within the sound discretion of the trial judge. *Vasquez v. State*, 241 Ga. App. 512, 513 (2) (527 SE2d 235) (1999). And it is well established that a witness may be qualified as an expert based upon knowledge gained through study or experience:

> To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status.

(Citation omitted.) Id.

Fadley is a psychotherapist at the Georgia Center for Children. She has a master's degree in child and family studies from Syracuse University and a master of social work degree from the University of Michigan. At Michigan, Fadley was a civitas scholar, which meant that she received 16 months of specialized training on child maltreatment with an emphasis on child sexual abuse. Fadley testified that in the civitas scholar program she trained to be a therapist, an interviewer and an evaluator. Fadley lectures in the area of child trauma and maltreatment, specifically on behaviors associated with child sexual abuse. She is a licensed master social worker in the State of Georgia and belongs to the American Professional Society on the Abuse of Children, the Association for Play Therapy and the National Association of Social Workers. In her position at the Georgia Center, she conducts evaluations and interviews and does therapy on a number of children daily. She testified that she had conducted over 300 interviews with children and had seen thousands of children in connection with her role as a therapist. At the time of her testimony, Fadley had worked at the Georgia Center for 18 months and prior to that had worked at Duke University Medical Center conducting forensic interviews and therapy, although not forensic evaluations, from approximately April 1996 to October 1997.

Based on this evidence, we find no abuse of discretion in the trial court's qualification of Fadley as an expert in the area of forensic evaluation. And because the testimony about which Siharath complains falls within Fadley's area of expertise, the testimony was properly admitted. *Thomas v. State*, 239 Ga. App. 460, 462-463 (3) (521 SE2d 397) (1999).

2. Siharath next contends that the evidence was insufficient to support his convictions because it consisted primarily of the victim's testimony, supported by hearsay testimony of prior statements. Moreover, he argues that the evidence was insufficient to establish the required element of force to sustain his conviction for rape.

It is well settled, however, that a victim's testimony, without more, is sufficient to sustain a conviction for rape or child molestation. See, e.g., *Alford v. State*, 243 Ga. App. 212, 213 (1) (534 SE2d 81) (2000) (victim's testimony, even without more, can be sufficient to sustain rape conviction); *Atkins v. State*, 243 Ga. App. 489, 490 (1) (c) (533 SE2d 152) (2000) (Georgia law does not require corroboration of a child molestation victim's testimony). Moreover, in order to prove the rape of a child, only minimal evidence of force is required. Proof of physical violence, intimidation or threats may be used to prove force. *State v. Collins*, 270 Ga. 42, 44-45 (508 SE2d 390) (1998). And "[l]ack of resistance, induced by fear, is force, and may be shown by [the victim's] state of mind from her prior experience with [the defendant] and subjective apprehension of danger from him." (Citation, punctuation and emphasis omitted.) *House v. State*, 236 Ga. App. 405, 408 (1) (512 SE2d 287) (1999).

Here, the victim showed the jury through the use of diagrams where and how her stepfather had touched her. She testified that prior to telling anyone else she had told her best friend that her stepfather had raped her. She said that she did not resist his advances because she was afraid of him. And she testified as to prior acts of violence against her mother, her sister and her by her stepfather. Moreover, a number of witnesses testified regarding extremely consistent prior statements made by the victim describing what had happened and her stepfather's violent nature and acts.

Accordingly, we find the evidence was sufficient to sustain Siharath's convictions. See *Drake v. State*, 239 Ga. 232, 235-236 (2) (236 SE2d 748) (1977); *Calloway v. State*, 199 Ga. App. 272, 273 (1) (404 SE2d 811) (1991).

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED OCTOBER 19, 2000 —
RECONSIDERATION DENIED NOVEMBER 9, 2000.

*Gerard B. Kleinrock*, for appellant.
Chanthala Siharath, *pro se*.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.