## S02A0932. PHILLIPS v. THE STATE.
### (571 SE2d 361)

SEARS, Presiding Justice.

Appellant Eric Phillips appeals his convictions for malice murder and related crimes, resulting in a life sentence,[1] alleging that the trial court erred in overseeing voir dire, in its dealings with the jury, in numerous evidentiary rulings, and in expressing bias against appellant. We conclude that although the trial court erred by admitting a witness's hearsay statement under the necessity exception, the statement was cumulative of other properly introduced evidence and therefore harmless. Finding no merit to appellant's other contentions, we affirm. We remand, however, for the trial court to consider appellant's claim of ineffective assistance of trial counsel.

The evidence at trial showed that appellant and an accomplice knocked on the door of an apartment occupied by Rideaux, Jones, Huff, Clark, and Veasy. Appellant was searching for Rideaux, with whom he had fought several days earlier. As the apartment door opened, appellant fired three shots, killing Clark. Veasy, who had been asleep on the couch, then ran out of the apartment. Appellant pursued Veasy, shot and wounded him, and asked the location of Rideaux. When Veasy replied that Rideaux was inside the apartment, appellant returned there. Unable to locate the hiding Rideaux and Huff, appellant fired several random shots and left the apartment.

1. The evidence at trial, construed most favorably to the jury's verdicts, was sufficient to enable rational triers of fact to find appel-

---

[1] The crimes occurred on March 1, 1999, and appellant was indicted on August 13, 1999. Trial was held from January 30 to February 3, 2000, and appellant was convicted on all counts. He was sentenced to life in prison for malice murder; twenty consecutive years for aggravated assault; twenty consecutive years for burglary; and five consecutive years for illegal firearm possession. Appellant filed a notice of appeal on March 1, 2000. This Court then remanded the matter and appellate counsel was appointed by the trial court. The trial transcript was certified on May 25, 2001. An out-of-time appeal was granted on February 15, 2002, a second notice of appeal was filed on February 21, 2002, and the matter was docketed with this Court on March 13, 2002. The appeal was submitted for decision without oral argument on May 6, 2002.

lant guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Appellant complains that the trial court erred by not excusing a potential juror who expressed a personal bias against those accused of criminal activity, requiring appellant to use a peremptory strike against the juror. During voir dire, however, appellant did not move to strike the juror for cause, and the trial court did not err by failing to excuse the juror sua sponte.[3] Accordingly, this enumeration of error is waived.[4]

3. The trial court judge administered the following oath to the jury:

> Do each of you solemnly swear or affirm, now that you have been selected as jurors in this case, that you will listen carefully to all the evidence presented to you, and apply the law that I give you at the end of the case to the facts as you find them to be? If so, please say "I do."

This oath deviated from the prescribed language of OCGA § 15-12-139, which states that:

> In all criminal cases, the following oath shall be administered to the trial jury: "You shall well and truly try the issue formed upon this bill of indictment (or accusation) between the State of Georgia and [the accused], who is charged with [a crime], and a true verdict give according to the evidence. So help you God."

Appellant did not object to the oath given at trial, but on appeal claims that because the oath failed to require the jury to return a "true verdict," his guilty verdict should be set aside.

A criminal defendant may not waive the trial court's complete failure to administer an oath to the jury.[5] However, where the oath given by the trial court deviates from the one statutorily prescribed, an accused is required to raise an objection, and acquiescence to the oath until after the verdict is returned results in a waiver of the objection on appeal.[6] It follows in this matter that appellant's claim of error regarding the oath given to the jury is waived.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Whatley v. State*, 270 Ga. 296, 297-298 (509 SE2d 45) (1998).

[4] Id.; *Ashford v. State*, 271 Ga. 148, 149 (518 SE2d 420) (1999).

[5] *Slaughter v. State*, 100 Ga. 323 (28 SE 159) (1897); *Culpepper v. State*, 132 Ga. App. 733 (209 SE2d 18) (1974). See *Grant v. State*, 272 Ga. 213 (528 SE2d 512) (2000).

[6] *Slaughter*, 100 Ga. at 330; *Colbert v. State*, 178 Ga. App. 657, 658 (344 SE2d 479) (1986). See Daniel, Georgia Criminal Trial Practice (1999 ed.), § 18-31.

4. Appellant argues that the trial court erred in admitting Rideaux's videotaped statement to police, made shortly after the crimes occurred, into evidence under the necessity exception to the hearsay rule. In order to introduce any hearsay statement under the necessity exception, (1) the declarant must be unavailable to testify; (2) there must be particularized guarantees of the statement's trustworthiness; and (3) the statement must be both relevant to a material fact and more probative regarding that fact than any other evidence concerning appellant's motive for the crimes.[7] Appellant urges that because these three criteria were not established before the trial court, Rideaux's taped statement should not have been admitted under the necessity exception. As explained below, we agree.

Having reviewed the transcript, we believe that the State established that Rideaux was unavailable to testify, as he could not be located despite a diligent search by the authorities, was officially listed as a missing person at the time of trial, and was variously reported to be either dead or having fled the state and gone into hiding.[8]

However, the State failed to establish that particularized guarantees of trustworthiness existed so that Rideaux's statement to police could be deemed credible enough to warrant its admission without subjecting Rideaux to cross-examination.[9] Merely because Rideaux made his statement to police within hours of the shooting and never recanted or contradicted his statement does not, standing alone, demonstrate that the statement was sufficiently trustworthy to warrant its admission under the necessity exception. Only where "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross examination would be of marginal utility" does the hearsay rule not bar admission of a hearsay statement at trial.[10]

Furthermore, having reviewed the videotape of Rideaux's brief statement and compared it to the transcripted trial testimony of other witnesses, we conclude that while Rideaux's statement certainly was relevant, as it detailed his observations of the crimes' commission, the statement was no more probative on the issues discussed therein than the testimony of at least three other individuals who were in the apartment when appellant committed his crimes.[11]

---

[7] *Holmes v. State*, 271 Ga. 138 (516 SE2d 61) (1999); *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998).

[8] See *Campos v. State*, 273 Ga. 119, 122 (538 SE2d 447) (2000); *Walton v. State*, 272 Ga. 73, 74 (526 SE2d 333) (2000); *Holmes*, 271 Ga. at 141-142 (Benham, C. J., concurring specially).

[9] See *Idaho v. Wright*, 497 U. S. 805, 820 (110 SC 3139, 111 LE2d 638) (1990).

[10] Id.

[11] See *Clark v. State*, 271 Ga. 6 (515 SE2d 155) (1999).

Rideaux told police what he had heard and seen on that night, and also told police about his earlier fist fight with appellant, which apparently motivated appellant's attack. However, the same facts recounted by Rideaux in his videotaped statement were also recounted by witnesses Veasy, Jones and Huff, and Rideaux made no relevant comments in his statement that were not also testified to by these three other witnesses.

The criteria for admission of hearsay evidence under the necessity exception are not mere niceties. Unless a party moving for a hearsay statement's admission comes forward and establishes that all three criteria are clearly satisfied, the trial court must deny admission and the prohibition against hearsay evidence must be upheld. In this case, the State altogether failed to establish two of the three criteria necessary to warrant the admission of Rideaux's videotaped statement under the necessity exception to the rule against hearsay. Therefore, the trial court erred by allowing the videotape to be played for the jury.

Nonetheless, as explained, Rideaux's statement was cumulative of other evidence that was properly introduced at appellant's trial. Because the erroneous admission of hearsay testimony under the necessity exception is harmless where there is other evidence proving the substance of the hearsay,[12] the improper admission of Rideaux's statement does not require that we reverse appellant's conviction.

5. Appellant claims the prosecutor engaged in misconduct by calling the victim's mother to the stand, where she became emotional while identifying a photograph of the victim taken while he was alive. Appellant did not raise this objection at trial, however, and it is therefore waived on appeal.[13]

6. At trial, appellant's mother testified that appellant lived in California and that, after visiting her in Atlanta the week before the murder, he returned there. Another purported alibi witness, Smith, who was appellant's employer in California, failed to appear at trial. However, an FBI agent testified on cross-examination that while being interviewed, Smith stated that appellant's mother had asked Smith to say that appellant was at work at the time of the shooting when, in fact, he was not. Appellant claims that the trial court erred by allowing the State to use this hearsay testimony to impeach a non-testifying witness, Smith. We disagree. Appellant elicited the testimony complained of by asking the FBI agent whether Smith told

[12] *Gardner v. State*, 273 Ga. 809, 813 (7) (546 SE2d 490) (2001); *Bellamy v. State*, 272 Ga. 157, 161 (7) (527 SE2d 867) (2000); *Holmes v. State*, 271 Ga. at 141 (2); *Suits v. State*, 270 Ga. 362, 365 (2) (507 SE2d 751) (1998).

[13] *Ledford v. State*, 264 Ga. 60, 66 (439 SE2d 917) (1994).

him that appellant was in California at the time of the killing. Appellant cannot purposefully elicit testimony at trial, and then claim on appeal that the trial court erred in admitting that same testimony.[14]

7. Appellant urges that the trial court erred by charging the jury that the intent to kill may be presumed from the customary use of a deadly weapon. This charge was expressly disapproved by us in *Harris v. State*.[15] However, appellant neither objected to this charge at trial nor reserved objections to the overall charge. Accordingly, this enumeration is waived on appeal.[16]

8. After the jury returned its guilty verdicts and before imposing sentence, the trial judge stated that she was scheduled to speak at the victim's high school, and that she did not learn that the victim attended that particular school until halfway through the trial. She then stated that:

> [T]his trial will be heavy on my heart as I address [the victim's] classmates and seek to make sure that the individuals that are in the audience of the address will do all they can to make sure that they are not the victim of a crime or find themselves, as [appellant] does, convicted of the charges of murder.

After imposing a life sentence on appellant, the judge stated that she hopes appellant will not "see the outside of the prison system during [his] lifetime," and that she intends to actively participate in any parole determinations to ensure that the life sentence imposed on appellant is carried out.

Judges have an ethical duty to disqualify themselves from a matter whenever they have a personal bias or prejudice concerning a party appearing before them.[17] Appellant contends that in this matter, the trial judge's statements recited above establish that she violated this ethical obligation and should have recused herself from appellant's trial.

Regarding the first comment complained of (that the case would be "heavy on [the judge's] heart" as she spoke to the victim's classmates), read in context, it is clear that the trial judge made these statements while expressing sympathy to the victim's family. The statements were intended to express distress at the killing and the hope that other students would not be the victims or perpetrators of such crimes. The statement does not violate any of the trial judge's

---

[14] *Harris v. State*, 272 Ga. 455, 456 (532 SE2d 76) (2000).
[15] 273 Ga. 608 (543 SE2d 716) (2001).
[16] *Anderson v. State*, 262 Ga. 331, 332 (418 SE2d 39) (1992).
[17] Code of Judicial Conduct ("CJC"), Canon 3 (B) (5) and (E).

ethical obligations.

Regarding the second statement (that the trial judge hopes appellant will remain in prison and intends to actively participate in his efforts to obtain parole), we note that judges must take steps to avoid the appearance of impropriety and "must be alert to avoid behavior that may be perceived as prejudicial."[18] However, " 'in order to be disqualifying, [a trial judge's] alleged bias "must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case." ' "[19] Furthermore, the alleged bias "must be ' "of such a nature and intensity to prevent the defendant . . . from obtaining a (trial) uninfluenced by the court's prejudgment." ' "[20]

Having reviewed the record in this matter, we are satisfied that the trial judge's post-sentencing statements were based entirely upon what she learned of appellant and his crimes during the course of trial. The trial judge prefaced her comments by stating that appellant's demeanor during the course of trial spoke "volumes" and no doubt was "conveyed to the jury and probably influenced their decision." The judge also made reference to the overwhelming evidence of appellant's guilt and the senseless nature of appellant's crimes. There is no evidence of record to show that the trial judge harbored a prejudgment bias against appellant, and the trial transcript convinces us that the statements complained of were based entirely upon what the judge learned of appellant and his crimes during trial. Accordingly, the trial judge's post-sentencing statements do not support appellant's claim that the judge should have recused herself.

9. In his final enumeration of error, appellant claims that he received ineffective assistance from trial counsel. For the reasons explained below, we remand this issue to the trial court for an evidentiary hearing.

Following his conviction, appellant's trial counsel filed a notice of appeal without first seeking a new trial. The matter was docketed in this Court, and we remanded so that new appellate counsel could be appointed. Once that appointment occurred, new appellate counsel appeared before the trial court and requested an out-of-time appeal and also sought permission to file a motion for new trial. The trial court determined that because appellant had not originally sought a motion for new trial but rather had filed a notice of appeal, it would grant an out-of-time appeal but would not permit appellant a motion

[18] Commentary, CJC 3 (B) (5). See *Birt v. State*, 256 Ga. 483 (350 SE2d 241) (1986).

[19] *Birt*, 256 Ga. at 485-486, quoting *United States v. Grinnell Corp.*, 384 U. S. 563, 583 (86 SC 1698, 16 LE2d 778) (1966). See *Carter v. State*, 246 Ga. 328, 329 (271 SE2d 475) (1980).

[20] *Birt*, 256 Ga. at 486, quoting *Jones v. State*, 247 Ga. 268, 271 (275 SE2d 67) (1981).

for new trial. In its order the trial court stated that it "granted the motion for out-of-time appeal specifically and solely for the purpose of filing a second notice of appeal."

This Court has held that "the grant of an out-of-time appeal constitutes permission to pursue appropriate post-conviction remedies, including a motion for new trial."[21] Accordingly, we have held that under normal circumstances, a claim of ineffective assistance of trial counsel may not be asserted in an out-of-time appeal unless it is first raised in a motion for new trial brought after the grant of the out-of-time appeal.[22] In this matter, however, appellant's rightful attempt to bring a motion for new trial contemporaneously with the grant of his out-of-time appeal was curtailed by the trial court. In so doing, the trial court ruled contrary to our precedent discussed above, and improperly prevented appellant from raising his claim of ineffective assistance of trial counsel at the earliest practicable moment, as required by law.[23] Accordingly, we remand this matter to the trial court for an evidentiary hearing on appellant's ineffectiveness claim.

*Judgment affirmed and case remanded. All the Justices concur.*

DECIDED OCTOBER 15, 2002.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.

---

[21] *Ponder v. State*, 260 Ga. 840, 841 (400 SE2d 922) (1991). See *Potter v. State*, 272 Ga. 430, 432 (530 SE2d 725) (2000).

[22] *Ponder*, 260 Ga. at 841-842.

[23] See id.