S04A1145. JOHNSON v. THE STATE.
(602 SE2d 623)

SEARS, Presiding Justice.

Appellant Shunekia Johnson appeals her convictions for felony murder and related crimes,[1] alleging that the trial judge's biased

---

[1] The crimes occurred on January 9, 2000. Appellant was indicted on January 25, 2000, and reindicted on April 3, 2001. A jury trial was held April 23-26, 2001. Before trial commenced, the trial court dismissed a charge of burglary. A directed verdict was granted with regard to a charge

conduct prejudiced her right to a fair trial. As explained below, we conclude that because the trial judge's conduct raised serious questions concerning his impartiality and gave rise to the appearance of impropriety, it was error to deny appellant's motion for recusal. Therefore, we reverse.

The evidence of record shows that appellant believed Rowe owed her money for drugs she had supplied to him. Appellant recruited Arnold to assist her in recovering the drug debt. Arnold, in turn, recruited Walton and Turnipseed to join him. Appellant, accompanied by Arnold, Walton, and Turnipseed ("the three accomplices"), traveled from Atlanta to Carrollton, where Rowe lived. The three accomplices, who were armed with handguns, left appellant at a nearby house before going to Rowe's home. Rowe, however, was not there.[2]

The three accomplices then rendezvoused with appellant. One of the accomplices said he intended to kill Rowe, and appellant replied: "I didn't tell y'all to kill nobody. [I] told you to go over there and whip his ass and take my money and take my dope."

Appellant then instructed the three accomplices to kick in the door to Rowe's house, which they did. The threesome then began to search the house for drugs and money. At that time, Rowe returned home and accomplice Arnold hit him with a pistol and emptied his pockets, taking a small amount of money. Rowe's friend, Bryant, then entered the house and accomplice Arnold shot a bullet into his chest, killing him. Co-defendants Arnold and Walton fled the scene in the car they had arrived in, while co-defendant Turnipseed stole Rowe's Cadillac, as appellant had instructed him to do.

At trial, accomplice Arnold testified that appellant had brought two handguns to his Atlanta home shortly before the killing and that the accomplices carried these guns with them to Carrollton on the date the crimes were committed.

The three accomplices were indicted along with appellant. After pleading guilty to lesser charges, they testified at appellant's trial.

---

of conspiracy to commit armed robbery. Appellant was convicted of all other charges and sentenced to life in prison for felony murder; fifteen consecutive years for armed robbery of the surviving victim, Rowe; ten consecutive years for the aggravated assault of Rowe; and five consecutive years for illegal firearm possession. An additional conviction for the armed robbery of the deceased victim, Bryant, was merged as a matter of fact with a conviction for the armed robbery of Bryant's motor vehicle. These convictions then merged as a matter of law with the conviction for felony murder. Appellant's new trial motion was filed on May 16, 2001, and denied on October 30, 2003. Appellant's notice of appeal was filed on November 20, 2003. The transcript was certified on February 23, 2004. The appeal was docketed on March 17, 2004, and orally argued on June 21, 2004.

[2] On the previous day, appellant and accomplices Arnold and Walton had driven to Carrollton, where appellant had pointed out Rowe's house and car.

1. The evidence of record, construed most favorably to the verdicts, was sufficient for rational triers of fact to conclude that appellant was guilty of felony murder, armed robbery, aggravated assault, and illegal possession of a weapon.[3]

2. During a hearing on appellant's motion in limine, the trial judge, while responding to appellant's concern that certain evidence might improperly place her character at issue,[4] openly opined that "being a party" to an armed robbery, an aggravated assault or a murder "certainly doesn't do anything to uphold [appellant's] character."[5]

Additionally, when accepting accomplice Arnold's guilty plea, the trial judge questioned him extensively about appellant's involvement in the crimes, especially about whether she provided the automobile driven by the accomplices to Rowe's house. Based upon Arnold's responses, the trial judge openly concluded during the guilty plea colloquy that appellant had "actually furnished the vehicle" used when the crimes were committed.

In making these statements, the trial judge erred by openly stating his conclusions regarding both facts that were in dispute and appellant's guilt. Under statute, a trial court may not express an opinion as to: (1) facts which have or have not been proved, or (2) the guilt of the accused.[6] Violation of this Code section "shall be held by the Supreme Court . . . to be error and the decision in the case reversed, and a new trial granted."[7]

Such reversal is required, though, only when such comments are made in the presence of the jury.[8] Here, the trial judge's conclusions were stated before trial commenced. Hence, standing alone, they do not mandate that appellant's convictions be reversed.

3. However, the record also reveals numerous instances during trial when the judge's behavior appears to have been biased against appellant's counsel and partial in favor of the State. For instance, during jury selection, in front of the entire panel from which the jurors and alternates were to be selected, defense counsel rose from his chair, presumably to address the court. According to a witness

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-2-20 (b) (a person is involved in a crime's commission if, among other things, she intentionally aids, abets, advises, encourages, hires, counsels, or procures another to commit the crime).

[4] See OCGA § 24-9-20 (b).

[5] While the trial judge denied appellant's motion in limine, he also noted that appellant was free to raise objections to purported character evidence during the course of trial.

[6] OCGA § 17-8-57.

[7] Id.

[8] *Miller v. State*, 243 Ga. App. 764 (533 SE2d 787) (2000).

who was in the courtroom, however, before counsel could speak, the trial judge spoke in a loud, harsh and condemning voice, telling counsel to "sit down and shut up."[9] Based upon the record before us, there appears to have been no provocation or explanation for this statement.

The record also shows that when defense counsel raised objections to questions posed to witnesses by the prosecutor, the judge often responded with undue hostility directed at counsel. At one point, the trial court rejected such an objection by telling counsel that a witness being cross-examined by the State could testify with regard to whatever subjects the trial judge wanted to hear about, and then warned counsel not to "interrupt the [State's] cross-examination again" by raising objections. Conversely, while defense counsel was cross-examining a different witness, the judge interposed his own objection to the questions being posed, even though the prosecutor had raised no objection on behalf of the State. The record reveals other instances, too, when the trial court berated counsel in front of the jury for interrupting or impeding the proceedings when, in fact, it appears that counsel merely raised legitimate objections.

Also during trial, following accomplice Turnipseed's testimony on behalf of the State, a recess was taken during which defense counsel left the courtroom. In counsel's absence, the trial judge called the prosecutor to the bench and, in an ex-parte conversation, told the prosecutor that the file indicated that appellant's brother had issued threats against some of "our witnesses." The judge then told the prosecutor that "we need to get into the fact that witnesses have been intimidated . . . [and] I want you to develop that record." When proceedings resumed, the State's next witness was questioned by the prosecutor about whether she had been threatened with harm if she testified.

After a number of such incidents, defense counsel, out of the jury's presence, moved for the trial judge's recusal and, alternatively, sought a mistrial on grounds that the judge had shown a lack of objectivity, had displayed bias against appellant and her counsel, and had assisted the prosecutor in making his case before the jury. The trial court denied the motions, and warned defense counsel that if he sought again "to bring discredit . . . upon the court," the court would cite him for contempt.

Judges, of course, have an ethical duty to disqualify themselves from any matter in which they have a personal bias or prejudice

---

[9] See *Milhouse v. State*, 254 Ga. 357, 359 (329 SE2d 490) (1985) (contentions that a trial judge's derogatory or prejudicial statements and demeanor will be considered so long as a reviewable record has been completed; one method of creating such a record is to obtain testimony from witnesses who were in the courtroom at the time of the incident in question).

concerning a party or an attorney appearing before them.[10] In this regard, a trial judge "shall avoid all impropriety and appearance of impropriety."[11] Our Code of Judicial Conduct provides that "judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party or a party's lawyer."[12] Within the context of this requirement, we have previously interpreted the word "should" to mean "shall."[13]

We are mindful of the extraordinary pressures attending a criminal trial of this magnitude. On the one hand, defense counsel is obligated to vigorously defend his client against all charges brought by the State. Likewise, prosecutors must effectively present the State's case to the jury. At the same time, the trial judge is charged with ensuring that the rules of evidence and procedure are followed, and that the proceedings are both orderly and fair. When these several interests come together in the courtroom during trial, we believe that occasional, brief disagreements between the bench and bar are to be expected.

The instances discussed above, however, represent more than mere friction between zealous counsel and a diligent jurist. The judge's conduct, as discussed above, created the impression that he harbored an inclination to be biased against appellant and partial toward the prosecution. We need not decide whether such bias and impartiality actually existed, because judges are ethically bound to disqualify themselves whenever their "impartiality *might reasonably be questioned*," including instances where the judge's behavior could indicate that he or she "has a personal bias or prejudice concerning a party or a party's lawyer."[14]

As explained, the trial judge in this case stated his conclusions regarding appellant's guilt even before trial began; repeatedly treated defense counsel in a demeaning and disparaging manner in the jury's presence; belittled counsel in the jury's presence for his attempts to raise objections; forbade counsel in the jury's presence from raising legitimate objections; participated in ex parte communications with the prosecutor in which he directed the State's line of questioning and referred to the State's witnesses as "our witnesses"; and construed counsel's well-grounded recusal motion as an effort to demean and

---

[10] *Phillips v. State*, 275 Ga. 595, 599 (571 SE2d 361) (2002).

[11] CJC Canon 2; *King v. State*, 246 Ga. 386, 389 (271 SE2d 630) (1980); *Ferry v. State*, 245 Ga. 698, 699 (267 SE2d 1) (1980).

[12] CJC Canon 3.E (1) (a).

[13] *King*, 246 Ga. at 389; *Savage v. Savage*, 234 Ga. 853, 856 (218 SE2d 568) (1975).

[14] CJC Canon 3.E (1) (a) (emphasis supplied).

debase the court. We believe these actions certainly raised reasonable questions concerning the judge's partiality and bias. Furthermore, the actions were "of such a nature and intensity to prevent the defendant . . . from obtaining a (trial) uninfluenced by the court's prejudgment . . . [and] give fair support to the charge of a bent of mind that may prevent or impede [the] impartiality of [justice]."[15]

Because the trial judge's impartiality was questionable, it was error for him to deny appellant's motion for recusal.[16] Because we cannot say it is likely that the incidents discussed above had no impact on the jury's disposition of this matter, we must reverse the judgments of conviction.[17]

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 13, 2004.

*Gary P. Bunch*, for appellant.
*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Andrette Watson, Assistant Attorney General*, for appellee.

---

[15] *Birt v. State*, 256 Ga. 483, 486 (350 SE2d 241) (1986), quoting *Jones v. State*, 247 Ga. 268, 271 (275 SE2d 67) (1981).

[16] *Birt*, 256 Ga. at 486.

[17] Appellant's enumeration regarding the prosecutor's closing statement is waived as no objection was raised at trial. *Mullins v. State*, 270 Ga. 450, 451 (511 SE2d 165) (1999).