### A08A2318. HUBERT v. THE STATE.
(676 SE2d 436)

BERNES, Judge.

Anthony L. Hubert appeals from his conviction on incest and four counts of child molestation. Hubert challenges the sufficiency of the evidence supporting his conviction and asserts that the trial court erred in denying his motion for directed verdict. He also argues that the trial court erred by forcing him to decide whether to withdraw his speedy trial demand or proceed to trial on the day that his case was called; by admitting a state's witness as an expert in forensic child interviews over his objection; and by ordering his trial counsel to move for directed verdict prior to the close of the state's case. Hubert further contends that the trial court's conduct during the trial indicated an undue bias against the defense and that he was denied the right to a fair trial due to juror misconduct. Finally, in several enumerations of error, Hubert asserts that he received ineffective assistance of counsel. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury verdict. *Sullivan v. State*, 295 Ga. App. 145 (671 SE2d 180) (2008). So viewed, the evidence presented at trial showed that Hubert is the father of the two victims, S. H. and Sh. H. In July 2006, S. H., then 14 years old, revealed to her dance teacher that Hubert had been sexually molesting her. Sh. H., then 13 years old, was present during her sister's outcry and told the dance teacher that she had also been sexually molested by Hubert. After discovering that the girls had not told their mother about Hubert and were reluctant to do so, the dance teacher encouraged S. H. to write a letter detailing the abuse and suggested that they give it to her mother together. Approximately a week and a half later, the

72

dance teacher met with the girls and their mother, at which time S. H. presented her mother with the letter. The mother contacted law enforcement and an investigation ensued.

S. H. revealed in a recorded police interview, and later testified at trial, that Hubert started committing sexual acts against her when she was seven years old and he continued to do so until she was twelve years old. The abuse occurred in their family home and consisted of inappropriate touching and sexual intercourse. A video recording of the interview was played for the jury.

Sh. H. also gave a recorded police interview and testified at trial. She disclosed several incidents during which Hubert entered the bathroom as she showered and touched her "whole body," including her breasts and vagina. Sh. H. was in the fifth grade and this abuse occurred in their family home. A video recording of her interview was also played for the jury.

In addition to the above evidence, the jury heard testimony from a licensed clinical social worker who was admitted as an expert in child sexual abuse and its effect on children. The expert testified that the children's disclosures and their demeanor during their respective disclosures were consistent with that of children who had been sexually abused. The pediatric nurse practitioner who examined the victims also testified that, although the victims' physical examinations were normal, the results were consistent with their reports of sexual abuse.

1. Contrary to Hubert's assertion, the evidence set forth above was sufficient to authorize any rational juror to find Hubert guilty of the crimes charged beyond a reasonable doubt. See OCGA §§ 16-6-4 (a);[1] 16-6-22 (a) (1).[2] Indeed, the victims' testimony, standing alone, was sufficient to convict Hubert. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Baker v. State*, 245 Ga. 657, 665 (5) (266 SE2d 477) (1980); *Keith v. State*, 279 Ga. App. 819, 821 (2) (632 SE2d 669) (2006); *Cantrell v. State*, 231 Ga. App. 629, 629-630 (500 SE2d 386) (1998). It follows that the trial court did not err in denying Hubert's motion for directed verdict.[3] See *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d

---

[1] "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a).

[2] "A person commits the offense of incest when the person engages in sexual intercourse with a person to whom he or she knows he or she is related either by blood or by marriage [such as a] . . . [f]ather and daughter." OCGA § 16-6-22 (a) (1).

[3] To the extent that Hubert argues that the state failed to establish venue in Cobb County, Georgia, his argument lacks merit. Both of the victims testified that the sexual abuse occurred in their family home located in Cobb County.

60) (2007) ("[T]he standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.").

2. Hubert next asserts that the trial court "forced [him] to make a Hobson's choice" by requiring him to decide whether he desired to proceed to trial on the day his case was called. He contends that the trial court effectively prevented him from withdrawing his demand for speedy trial and requesting a continuance. Hubert's assertion is not supported by the record and completely lacks merit.

At the motion for new trial hearing, Hubert's trial counsel explained that Hubert wanted a trial quickly and, in accordance with Hubert's wishes, he filed a speedy trial demand. He then filed discovery on the state and, although the state did not delay in responding to the discovery, he received the responses only seven days prior to trial. Hubert's counsel visited Hubert in jail prior to the trial and expressed his belief that the trial court would grant Hubert a continuance based upon the short period of time between his receipt of the state's discovery and the scheduled trial date. See OCGA §§ 17-16-4 (the state must disclose and make available certain discoverable materials no later than ten days prior to trial); 17-16-6 (authorizing the court to grant a continuance when the time limitations set forth in OCGA § 17-16-4 are not met). Hubert and his trial counsel came to the mutual decision to move forward with the trial as scheduled.

Significantly, immediately prior to the commencement of the trial, Hubert's counsel announced to the court that he was ready and thoroughly prepared for trial, although he noted that additional time would allow for additional investigation. He wanted the record to be clear that he was willing to withdraw the speedy trial request and ask the court for a continuance if that was Hubert's desire. When asked pointedly whether he wanted a continuance, Hubert responded "[w]e're ready." The fact that he may regret now making that choice does not afford him the right to a new trial. See *Bowe v. State*, 288 Ga. App. 376, 379 (1) (654 SE2d 196) (2007) ("[S]elf-induced error is not grounds for reversal.") (citation, punctuation and footnote omitted).

3. Hubert further argues that the trial court's behavior toward defense counsel during the trial indicated an undue bias and prejudice against the defense and partiality in favor of the state. He contends that the trial judge should have recused himself from the trial. Neither Hubert nor his trial counsel asked the trial judge to recuse himself at any time; therefore, this issue is waived for appeal. See *Butts v. State*, 273 Ga. 760, 762 (3) (546 SE2d 472) (2001); *Hall v. State*, 235 Ga. App. 44, 45-46 (2) (508 SE2d 703) (1998).

4. Hubert next argues that the trial court erred when it admitted over his objection the interviewing detective as an expert in forensic child interviews. He specifically challenges the trial court's admission of the detective's opinion that during the interview, S. H. appeared to be emotionally traumatized. We disagree.

"An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like." (Footnote omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004). The determination of whether to accept or reject an expert witness rests within the sound discretion of the trial judge, and we will not disturb the trial court's ruling absent a manifest abuse of that discretion. *Taylor v. State*, 261 Ga. 287, 290 (1) (a) (404 SE2d 255) (1991).

The detective in this case testified that he was a member of the crimes against children unit of the police department at the time that he interviewed the victims. His training included two special courses designed specifically to teach techniques in interviewing children of sexual abuse. The detective testified that he had investigated between 75 and 100 cases involving children of sex crimes and that he had conducted at least 50 interviews of alleged sexually abused children.

Given the detective's training and experience, the trial court did not abuse its discretion in holding that the detective possessed a greater knowledge and experience in the area of forensic child interviews than that of the average juror and therefore did not err in qualifying the detective as an expert witness. See *Thomas v. State*, 239 Ga. App. 460, 462-463 (3) (521 SE2d 397) (1999); *Askew v. State*, 185 Ga. App. 282, 283-284 (5) (363 SE2d 844) (1987). Moreover, "[t]estimony regarding the victim's demeanor does not express an impermissible opinion on an ultimate issue of whether the victim was sexually abused." (Citation and punctuation omitted.) *Chauncey v. State*, 283 Ga. App. 217, 220 (3) (641 SE2d 229) (2007).

5. Hubert contends that the trial court erred when it ordered him to move for a directed verdict prior to the close of the state's case. As the state prepared to close its case, Hubert's counsel requested a mid-morning recess in order to review certain notes after he finished cross-examining but prior to releasing the state's final witness. The trial court instructed him to make his motion for directed verdict at that time so as to avoid having to send the jury back out of the courtroom immediately after the break. Hubert made no objection to the judge's instruction and acquiesced to his request; therefore, this issue has been waived and is not subject to appellate review. See *Agee v. State*, 279 Ga. 774, 775 (2) (621 SE2d 434) (2005).

6. Hubert further asserts that he was denied his sixth amendment right to a fair trial when extrajudicial evidence was allegedly introduced to the jury through juror misconduct. The record does not support Hubert's contention.

One issue presented during the trial dealt with the legal duty of the dance teacher, who was also a school teacher, to report the sexual abuse to the police following S. H.'s outcry. The defense repeatedly emphasized to the jury that Georgia law mandates that a school teacher report instances of abuse once they become known. See OCGA § 19-7-5 (c) (1) (H).

During the motion for new trial hearing, the trial court learned that one of the jurors had been present during a conversation between the juror's wife and his daughter, who was discussing an in-service training that she was receiving as a school teacher. That juror testified that early in the trial, prior to the jury's deliberations, he was having a conversation during a jury break with two other jurors, both of whom were school teachers and were aware of the reporting requirements, in which he expressed doubt that his daughter was familiar with her duty to report abuse. One of the jurors to whom that juror spoke testified to the same conversation. A third juror testified that she recalled no conversation regarding mandated reporting requirements during deliberations, and that no juror reported any outside information coming from a family member. Yet a fourth juror testified and stated that he could not really hear the statement made by the juror in question nor could he remember what it was, but he believed that the juror "came up with some clarifications" about the reporting requirements that the juror then incorporated into his deliberations. The fourth juror agreed that the statement was made during a jury break and that it was only heard by a small number of jurors. It is this testimony that Hubert argues warrants him a new trial.

Georgia law prohibits jurors from impeaching their verdict once it has been rendered. OCGA § 17-9-41 ("The affidavits of jurors may be taken to sustain but not to impeach their verdict."). The public policy considerations underlying this rule include the need to preserve the sanctity of juror deliberations, promote the finality of jury verdicts, and protect jurors from post-trial harassment. *Watkins v. State*, 237 Ga. 678, 683-684 (229 SE2d 465) (1976). A very narrow exception to this rule exists when a juror intentionally gathers extra judicial evidence, highly prejudicial to the accused, and communicates that information to the other jurors in the closed jury room. Id. at 685 (reversing a conviction after two jurors made an unauthorized visit to the crime scene and presented their findings to the other members of the jury so as to explain a time lapse in the evidence). But "[t]o set aside a jury verdict solely because of irregular jury

conduct, this Court must conclude that the conduct was so prejudicial that the verdict is inherently lacking in due process." (Footnote omitted.) *Butler v. State*, 270 Ga. 441, 444 (2) (511 SE2d 180) (1999).

The circumstances presented here do not meet that test. Not only has Hubert failed to establish that the verdict lacks due process, he has neglected to show that any statement by the juror in question amounted to misconduct. The only juror who arguably alleged improper conduct admitted that he could barely hear the statement in question and could not remember what it was. See *Butler*, 270 Ga. at 445 (2) (upholding guilty verdict despite allegations that a juror related extra judicial information because "there [was] no evidence regarding exactly what that information was or how it related to the jury's deliberations"). To the extent that there was a conflict in the evidence at the new trial hearing, the trial court as the factfinder was entitled to conclude that no outside information was communicated to the jury and we will not second guess such credibility determinations and weighing of the evidence. See *Glover v. State*, 292 Ga. App. 22, 26 (3) (663 SE2d 772) (2008).

Moreover, Hubert's counsel questioned the state's witnesses at length about the disclosure requirements, rendering any information that the juror offered from his daughter cumulative at best. See *Brown v. State*, 275 Ga. App. 281, 283-284 (1) (620 SE2d 394) (2005) (information alleged to have tainted the jury was cumulative of evidence admitted during the trial). Under these circumstances, the trial court did not abuse its discretion by denying Hubert's motion for new trial on this ground. See *Butler*, 270 Ga. at 445 (2); *Brown*, 275 Ga. App. at 283-284 (1); *Stokes v. State*, 232 Ga. App. 232, 234 (2) (501 SE2d 599) (1998).

7. Finally, Hubert argues that his trial counsel rendered ineffective assistance of counsel. Again, we disagree.

To prevail on a claim for ineffective assistance of counsel, a criminal defendant must establish both that his counsel's performance was deficient, and also that the deficient performance prejudiced his defense. *Scruggs v. State*, 294 Ga. App. 501, 503 (669 SE2d 485) (2008). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy." (Citation and punctuation omitted.) *Williams v. State*, 290 Ga. App. 841, 844 (4) (660 SE2d 740) (2008). Trial counsel's strategic and tactical decisions made throughout the course of the case offer no grounds for reversal on the basis of ineffective assistance. *Scruggs*, 294 Ga. App. at 503. Hubert enumerates numerous instances which he contends amount to ineffective assistance, each of which we will address in turn.

(a) Hubert first argues that his counsel was ineffective for failing to withdraw his speedy trial demand, request a continuance, or move to exclude evidence due to what Hubert characterizes as untimely discovery responses by the state. Hubert asserts that his counsel did not have sufficient time to prepare his defense as a result of the speedy trial demand.

As set forth fully in Division 2, Hubert made a voluntary and fully informed decision in conjunction with his counsel to proceed to trial. Hubert's counsel stated prior to trial and maintained at the motion for new trial that he was ready and thoroughly prepared for trial. He nonetheless consulted with Hubert and, in part due to Hubert's desire for a quick trial, they mutually agreed to decline the opportunity to seek a continuance and to move forward with the trial as scheduled. Hubert's current assertion that his trial counsel was ineffective for effectuating his desire for a speedy trial lacks merit and affords him no basis for relief. See *Woods v. State*, 275 Ga. 844, 848 (3) (b) (573 SE2d 394) (2002); *Celestin v. State*, 296 Ga. App. 727, 730 (2) (675 SE2d 480) (2009). Cf. *Clark v. State*, 271 Ga. App. 534, 537 (3) (610 SE2d 165) (2005).

Because Hubert failed to ask his trial counsel at the new trial hearing why he declined to otherwise move to exclude the state's evidence as a sanction under OCGA § 17-16-6, he has not overcome the presumption that his trial counsel acted within the range of reasonable, professional conduct. See *Locher v. State*, 293 Ga. App. 67, 71 (2) (b) (666 SE2d 468) (2008); *Baskin v. State*, 267 Ga. App. 711, 713 (1) (a) (600 SE2d 599) (2004).

(b) Hubert next asserts that he was denied effective assistance of counsel because trial counsel failed to adequately investigate his case and to obtain witnesses favorable to the defense. But Hubert proffered no evidence demonstrating that his counsel lacked preparation, nor did he give any indication of what additional information would have been revealed had his counsel done a more thorough investigation. Instead, Hubert again focuses on the short period of time that his counsel had prior to the commencement of trial and on his counsel's statement to the court that a continuance would allow him to conduct additional investigation.

As set forth in subdivision (a), Hubert cannot now complain about the time constraints that Hubert's speedy trial demand placed on his counsel after they mutually decided not to seek a continuance.

> Having declined to withdraw his speedy trial demand, [Hubert] cannot now complain that his attorney proceeded to trial without conducting a lengthier investigation of his case. Counsel's strategic decision to proceed to trial, made

after consultation with [Hubert], is not subject to second-guessing by this Court.

*Celestin*, 296 Ga. App. at 731 (2). While Hubert's counsel did acknowledge to the court that he could benefit from additional time, he also stated prior to trial and again during the motion for new trial hearing that he was thoroughly prepared to try Hubert's case.

And although Hubert now asserts that trial counsel should have called his son as a witness and obtained an expert to rebut the state's evidence, he failed to make any proffer of the witnesses' expected testimony and thus has not met his burden of demonstrating that the testimony would have been favorable and that it would have created a reasonable probability of a different outcome at trial. See *Duvall v. State*, 273 Ga. App. 143, 145-146 (3) (b) (614 SE2d 234) (2005); *Stevenson v. State*, 272 Ga. App. 335, 341-342 (3) (c) (612 SE2d 521) (2005).

(c) Hubert argues that his counsel was ineffective because he failed to object to expert opinion testimony that Hubert asserts went to the ultimate issue in the case. Expert testimony that explicitly or implicitly goes to the ultimate issue to be decided by the jury, when that issue is not beyond the ken of the average juror, is inadmissible. See *Odom v. State*, 243 Ga. App. 227, 228 (1) (531 SE2d 207) (2000).

(i) Hubert challenges the pediatric nurse practitioner's testimony that the victims' physical examinations were consistent with their reports of sexual abuse. Georgia law is well established that an expert may express an opinion "as to whether medical or other objective evidence in the case is consistent with the victim's story." (Punctuation and emphasis omitted.) *Harris v. State*, 279 Ga. App. 570, 571 (1) (631 SE2d 772) (2006). See *Noe v. State*, 287 Ga. App. 728, 730 (1) (652 SE2d 620) (2007); *Atkins v. State*, 243 Ga. App. 489, 490-491 (2) (533 SE2d 152) (2000). Compare *Putnam v. State*, 231 Ga. App. 190, 191-192 (2) (498 SE2d 340) (1998) (expert opinion testimony as to whether victim is telling the truth invades the province of the jury and is improper). In this case, the trial court accepted the pediatric nurse practitioner as an expert in recognizing physical signs of abuse in children. It follows that her opinion testimony that the physical examinations that she conducted on the children were consistent with their accounts of sexual abuse was not improper. *Noe*, 287 Ga. App. at 730 (1); *Harris*, 279 Ga. App. at 571 (1); *Atkins*, 243 Ga. App. at 490-491 (2). Because any objection posed by Hubert's counsel to the challenged testimony would have been futile, his failure to object does not amount to ineffective assistance. See *Lupoe v. State*, 284 Ga. 576, 580 (3) (f) (669 SE2d 133) (2008); *McClain v. State*, 284 Ga. App. 187, 190 (4) (b) (643 SE2d 273) (2007).

(ii) Despite Hubert's allegation that the detective who interviewed the victims opined that the delay in S. H.'s outcry resulted from fear, our review of the record reveals no such statement by the detective and Hubert has given no citation to the record where the statement can be found. We therefore need not address this argument. See Court of Appeals Rule 25 (c) (2).

(iii) Hubert contends that his trial counsel should have objected to the licensed clinical social worker's expert opinion that S. H. seemed "shut down" and "dissociative" during the police interview and the expert felt that S. H. "had been terrifically and horribly traumatized because of her affect." Hubert neglected to question his counsel about the statement at the motion for new trial hearing. Consequently, Hubert has failed to overcome the presumption that counsel's decision not to object was tactical. *Glass v. State*, 255 Ga. App. 390, 403-404 (10) (g) (565 SE2d 500) (2002).

(d) Hubert argues that his trial counsel's performance was deficient because he failed to move for a recusal of the trial judge.

In certain circumstances, Georgia law mandates that trial judges recuse themselves from matters proceeding before them.

> Judges ... have an ethical duty to disqualify themselves from any matter in which they have a personal bias or prejudice concerning a party or an attorney appearing before them. In this regard, a trial judge shall avoid all impropriety and appearance of impropriety. Our Code of Judicial Conduct provides that judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where the judge has a personal bias or prejudice concerning a party or a party's lawyer.

(Punctuation and footnotes omitted.) *Johnson v. State*, 278 Ga. 344, 347-348 (3) (602 SE2d 623) (2004). To warrant disqualification, any alleged bias "must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." (Punctuation and footnote omitted.) *Phillips v. State*, 275 Ga. 595, 600 (8) (571 SE2d 361) (2002).

(i) Hubert's first complaint involves a comment made by the trial judge during the voir dire of an individual potential juror, but in the presence of several other potential jurors, in which the trial judge noted that, in cases where inappropriate touching has been alleged to have occurred two years prior to any investigation, medical evidence is frequently lacking. At the request of Hubert's counsel, the trial judge then excused every potential juror who was present when the statement was made in order to ensure that his comment had not

prejudiced the jury. The trial judge therefore demonstrated his impartiality by acceding to Hubert's concerns and excusing the jurors.

(ii) Hubert next cites a rebuke from the trial judge when Hubert's counsel attempted to dictate the manner in which a state's witness would be sworn. The trial court has broad discretion, however, to prescribe the manner in which the court's business will be conducted and to regulate the conduct of the parties, counsel and witnesses during the course of a trial. See OCGA § 15-1-3 (4), (5); *Johnson v. State*, 254 Ga. 591, 599 (11) (331 SE2d 578) (1985); *Phillips v. State*, 278 Ga. App. 439, 443 (2) (b) (629 SE2d 130) (2006). The trial judge did not exhibit undue bias against the defense by reminding Hubert's counsel that the swearing of witnesses fell within the dominion of the court. See id.

(iii) The most contentious exchange between the trial judge and Hubert's counsel dealt with whether Hubert could recall to the witness stand the detective who conducted the victims' videotaped interviews. After Hubert's counsel subjected the detective to an extensive cross-examination and then refused to release the detective from the subpoena, the trial court informed Hubert's counsel that he would be required to make a proffer of any additional questions that he intended for the detective prior to recalling the witness. See *McMichael v. State*, 252 Ga. 305, 307 (1) (313 SE2d 693) (1984) ("[T]he trial court has the power to deny the recall of a witness who testified previously where the testimony to be given by the recalled witness would be repetitious of the witness' earlier testimony."). Hubert's counsel nonetheless called the detective and requested that he return to court without first notifying the trial court of his intention to do so.

Although the dialog that ensued between the trial judge and Hubert's counsel was discordant, the vast majority of it took place outside of the presence of the jury and therefore was not prejudicial. Cf. *McClendon v. State*, 287 Ga. App. 238, 242 (5) (651 SE2d 165) (2007) (comments not made in the presence of the jury present no basis for reversal); *Miller v. State*, 243 Ga. App. 764, 768 (15) (533 SE2d 787) (2000). None of the judge's comments dealt with Hubert's guilt or innocence. See, e.g., *Flantroy v. State*, 231 Ga. App. 744, 746 (3) (501 SE2d 10) (1998). Moreover, Hubert's counsel testified at the new trial hearing and agreed that the trial judge never indicated that he did not like counsel personally; never indicated that he did not like counsel professionally; and never indicated that he had any ill feelings toward Hubert. Finally, and significantly, the trial court ultimately ceded to Hubert's wishes and allowed him to recall the detective. Hubert has thus failed to prove that the exchange illustrated any personal bias or prejudice against Hubert or his attorney

by the trial judge. See *Phillips*, 275 Ga. at 600 (8). Compare *Johnson*, 278 Ga. at 346-349 (3).

(iv) Finally, Hubert complains that the trial judge commented on the relevancy of evidence elicited by his counsel on cross-examination. But the comment came in the context of a ruling sustaining an objection by the state to a question from Hubert's counsel. "It is well established that a judge's remarks made when assigning reasons for rulings are neither an expression of opinion nor a comment on the evidence." (Citation and punctuation omitted.) *Gillman v. State*, 239 Ga. App. 880, 884-885 (4) (522 SE2d 284) (1999).

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 26, 2009 ▮▮▮▮▮▮▮▮▮▮

*Angela Moore-Brown*, for appellant.
*Patrick H. Head, District Attorney, Maurice Brown, John R. Edwards, Assistant District Attorneys*, for appellee.