**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days oft5 the date of decision to be deemed timely filed.**

**http://www.gaappeals.us/rules**

**March 29, 2016**

# In the Court of Appeals of Georgia

A15A2236. ALDAY v. THE STATE.

McFADDEN, Judge.

Faron Alday was tried before a jury and convicted of two counts of child molestation for touching the vaginal area and buttocks of minor child L. A. Alday appeals, asserting that the trial judge improperly expressed his opinion as to what had been proven in violation of OCGA § 17-8-57. Because we find that the trial judge violated OCGA § 17-8-57 by improperly intimating his opinion as to what had been proven in the case, we must reverse the convictions. However, there was sufficient evidence to support the convictions and therefore, despite the trial errors, Alday may be retried on the charges. See *Green v. State*, 291 Ga. 287, 288-289 (1) (728 SE2d 668) (2012); *Williams v. State*, 268 Ga. 488, 489 (491 SE2d 377) (1997). Alday's further contention that the trial court erred in excluding testimony concerning prior

feuds between him and his son, the father of L. A., presents nothing for review because Alday did not perfect the record with a sufficient proffer of the expected testimony.

1. *Sufficiency of the evidence.*

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We do not weigh the evidence or judge the credibility of witnesses, but determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Owens v. State*, 334 Ga. App. 203 (778 SE2d 830) (2015).

So viewed, the evidence shows that Alday is the grandfather of L. A. On June 28, 2012, L. A.'s father, who is Alday's son, entered Alday's house and saw him sitting on the couch with six-year-old L. A. The child's father testified that as he entered the house, Alday jumped up and got off the couch as if he had done something bad. The father took L. A. outside and asked if she and Alday had a secret. The father testified that L. A. immediately started crying and said that she did not want Alday to go to jail. The father asked L. A. if Alday had touched her and she said

that he had, although she did not describe the touching. The father reported the incident to his wife, L. A.'s mother, who was at work. The following day, the mother of L. A. asked her if anyone had touched her "no-no" spots, and L. A. said that Alday had done so on her clothes. A week later, a forensic interview of L. A. was conducted. L. A. initially told the forensic interviewer that she had not been touched on her private parts, but subsequently said that Alday had used his hand to massage her vaginal area and touch her buttocks. At trial, L. A. testified that Alday had massaged her on "the girl's part," but not on her "booty."

Based on the foregoing evidence, we "conclude that there was sufficient evidence from which the jury was authorized to find [Alday] guilty beyond a reasonable doubt of [the two counts] of child molestation." *Harris v. State*, 333 Ga. App. 118, 119 (1) (a) (775 SE2d 602) (2015) (citations omitted). Any "issues of consistency and credibility were for the jury to decide." *Jackson v. State*, 334 Ga. App. 469, 473 (2) (779 SE2d 700) (2015) (citations omitted).

2. *Violations of OCGA § 17-8-57.*

Alday asserts that the trial judge violated OCGA § 17-8-57 by making several improper comments that expressed his opinion about what had been proved in the case. We agree.

3

The version of OCGA § 17-8-57 that was in effect at the time of Alday's November 2013 trial provided:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this [c]ode section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.[1]

Comments by the trial judge "that include expressions of opinion as to what has been proven, the credibility of a witness, or on a disputed issue of material fact are clearly improper under OCGA § 17-8-57. [Cits.]" *Huff v. State*, 334 Ga. App. 254, 257 (1) (779 SE2d 29) (2015) (applying same version of statute that was in effect during the trial in this case).

a. *Comment outside jury's presence.*

After an objection during Alday's cross-examination of the state's first witness, L. A.'s father, the trial court excused the jury and conferred with the attorneys outside the jury's presence. During the conference, defense counsel explained that he wanted

---

[1] The current version of this code section became effective July 1, 2015, and similarly provides that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57 (a) (1).

4

to ask the father about how he had threatened and been aggressive toward Alday. The judge refused to allow such questioning, stating, "You know, [counselor], I believe if my father molested my daughter I believe I might be aggressive too."

Even outside the jury's presence, a judge "must be alert to avoid [comments] that may be perceived as prejudicial." *Phillips v. State*, 275 Ga. 595, 599 (571 S.E.2d 361 (2002) (citations and punctuation omitted) (comments after imposing sentence). Nevertheless, because the judge's comment was made outside the jury's presence, it does not constitute a violation of OCGA § 17-8-57. "That [c]ode section's scope . . . is confined to matters occurring before the jury. [Cit.]" *Ingram v. State*, 286 Ga. App. 662, 663 (2) (650 SE2d 743) (2007). "Hence, standing alone, [the judge's comment does] not mandate that appellant's convictions be reversed." *Johnson v. State*, 278 Ga. 344, 346 (2) (602 SE2d 623) (2004).

b. *Comments during cross-examination of forensic interviewer.*

There was no physical evidence in the instant case. The state's case rested almost entirely on the statements of L. A., including the forensic interview of L. A., which was introduced during the testimony of the forensic interviewer. The defense, through cross-examination of the forensic interviewer and presentation of testimony from its own forensic expert, sought to show that the forensic interview of L. A. was

5

unreliable because of biases and flaws in the interview. During defense counsel's cross-examination of the forensic interviewer, the trial judge interjected questions and comments.

(i) The evidence showed that during the forensic interview, L. A. initially indicated, in four separate responses to the interviewer's questions, that she had not been touched on her private part. But she subsequently stated that Alday had massaged her private area. At trial, during direct examination by the state, the forensic interviewer opined that the apparent inconsistency in L. A.'s statements could have been due to her not using the word "touch" and instead using the word "massage" to refer to any touching of her vaginal area. The interviewer further testified that Alday might have used that terminology as part of his "grooming process" of the child.

On cross-examination, defense counsel asked the forensic interviewer if her goal was to confirm the state's allegations of abuse, noting that during the forensic interview she had consulted with a law enforcement investigator who told her to ask certain questions of the child. After the forensic interviewer denied that confirming the allegations of abuse was her goal, defense counsel sought to challenge that response by pointing out that she had continued questioning L. A. even after she had

6

said "no" four times when asked about being touched. When counsel began asking the witness about those initial denials, the state objected as to the lack of a question, and the trial judge responded: "Well, I think he's reading toward a question. But I think that was the distinction they made between touching and a massage, but keep going, [defense counsel]."

The judge's comment referenced the forensic interviewer's earlier testimony that the inconsistency between L. A.'s initial responses that she had not been "touched" and her subsequent responses that she had been "massaged" could be explained by the terminology used by the child: the forensic interviewer had opined that Alday might have introduced the term "massage" in the course of "grooming" L. A., that is of teaching her to tolerate molestation. Prior to the judge's comment, the touch/massage distinction had not come up in defense counsel's questions or the forensic interviewer's responses.

"The purpose of OCGA § 17-8-57, at least in part, is to prevent the jury from being influenced by any disclosure of the trial court's opinion regarding the credibility of a witness. The determination of the credibility of a witness is soundly within the province of the jury and is a material fact in every case." *Murphy v. State*, 290 Ga. 459, 460 (2) (722 SE2d 51) (2012) (citations omitted). Here, the jury could

7

have interpreted the trial court's comment as expressing his favorable opinion of the credibility and reliability of the forensic interviewer's explanation of the distinction between the "touch" and "massage." "Therefore, the trial court erred in making statements that could have been interpreted as offering an opinion on [the forensic interviewer's] credibility." Id. at 461 (2).

(ii) Alday's attorney also asked the forensic interviewer if a statement by the child that she had been touched was different from a statement by the child that she had *told* someone that she had been touched. The court intervened, interrupting the defense's cross-examination to pose the following question to the witness: "Are we dealing here with a matter of semantics with . . . a little child[?] I mean, it would be like taking one page out of a hundred page book and isolating it. You've got to get the whole thing together basically; is that what you're trying to do?" The forensic interviewer responded that the distinction raised by the defense question was indeed "a matter of semantics."

It is arguable whether defense counsel's question was about a matter of semantics or about a substantive distinction – between a child saying she had been touched and saying she had *told* someone she had been touched. The characterization of defense counsel's question as merely a "matter of semantics" could have been

8

construed by a juror as an intimation of the judge's opinion that the defense was attempting to draw a meaningless distinction. "The reason for OCGA § 17-8-57 prohibiting the judge from intimating his opinion as to what has been proved is to keep the jury from being influenced." *Chumley v. State*, 282 Ga. 855, 857 (2) (655 SE2d 813) (2008) (citations and punctuation omitted).

We note that the lack of any objections to the trial court's comments is of no consequence because under the version of the statute then in effect, a "violation of OCGA § 17-8-57 was always 'plain error' and failure to object [would] not preclude appellate review. Given the mandatory nature of that version of OCGA § 17-8-57 and the case law interpreting it, we must reverse [Alday's] conviction[s] and remand the case to the trial court for a new trial." *Murphy*, supra at 461 (2) (citations omitted).

3. *Evidence of prior feuds between witness and defendant.*

Alday contends that the trial court erred in excluding testimony of prior feuds, apparently concerning financial dealings, between him and his son, L. A.'s father. Alday correctly notes that "[t]he state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury, and a defendant has the right to make a thorough and sifting cross-examination of the

9

witnesses against him." *Miceli v. State*, 308 Ga. App. 225, 227 (2) (707 SE2d 141) (2011) (citations and punctuation omitted).

> However, because [Alday] did not perfect the record with a sufficient proffer of the [expected] testimony, we are unable to reach the merits of his claim. Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort so that both the trial court and the appellate court can know whether the evidence really exists. In the absence of such a proffer, the assignment of error is so incomplete as to preclude its consideration by this (c)ourt.

*Miceli v. State*, 308 Ga. App. 225, 228 (2) (707 SE2d 141) (2011) (citations and punctuation omitted).

4. *Remaining claims of error.*

Having reversed the judgments of conviction and determined that Alday is entitled to a new trial, we need not address his additional claims of error as they are moot or unlikely to recur on retrial. *Willingham v. State*, 279 Ga. 886, 889 (3) (622 SE2d 343) (3) (2005).

*Judgment reversed. Ellington, P. J., and Dillard, J., concur in the judgment only.*